**COUNTY LINE JOINT VENTURE,**
Plaintiff–Appellant,

v.

**The CITY OF GRAND PRAIRIE,
TEXAS, Defendant–Appellee.**

No. 87–1304.

United States Court of Appeals,
Fifth Circuit.

March 18, 1988.

William Charles Bundren, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for plaintiff-appellant.

George A. Staples, Jr., Staples, Foster & Hampton, Hurst, Tex., R. Clayton Hutchins, City Atty., Grand Prairie, Tex., for defendant-appellee.

Before CLARK, Chief Judge, BRIGHT,[*] Senior Circuit Judge and GEE, Circuit Judge.

BRIGHT, Circuit Judge:

County Line Joint Venture (County Line) brought suit for injunctive relief and monetary damages against the City of Grand Prairie, Texas (City) on the grounds that it violated County Line's constitutional and state-created rights by applying a city zoning ordinance which automatically extinguished County Line's specific use permit (SUP) for six months of non-use. The constitutional violations allegedly committed

---

[*] Senior Circuit Judge of the Eighth Circuit, sitting by designation.

by the City include a denial of procedural due process, substantive due process, equal protection and fifth and fourteenth amendment taking. The district court [1] granted summary judgment in favor of the City on the procedural due process issue and dismissed the entire action. We affirm the district court's grant of summary judgment as to the procedural due process issue but reverse the district court's dismissal of this action and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

County Line owns certain real property located in Grand Prairie, Texas. In 1976, County Line sought and received an SUP permitting it to sell alcoholic beverages on the premises.[2] In February 1985, the city council passed an ordinance entitled § B–713 which automatically terminates all SUPs that are not used for a period of six months.[3] The City gave public notice in a local newspaper that it was considering such an amendment and subsequently held a public hearing on the proposed ordinance.

On November 27, 1985, County Line's current tenant applied to the city secretary for an alcoholic beverage license, dance hall license, and a mechanical amusement device license. The city secretary checked the records to determine whether issuance of such licenses was appropriate. Her research disclosed that the property had been unoccupied for approximately one year and that pursuant to Ordinance § B–713, County Line no longer possessed an SUP. Be-

cause no license could be issued without an SUP, the secretary denied the license applications.

Following the city secretary's denial, County Line attempted to appeal the city secretary's decision regarding the SUP's termination to the zoning board of adjustments and appeals. The zoning board determined that it lacked jurisdiction to hear any complaint regarding a city secretary decision because the zoning board had jurisdiction over zoning matters which, by definition, did not include the city secretary's licensing decisions of an official of the city. County Line brought this claim for relief for violation of its civil rights and pendant state claims in United States District Court.

Both parties moved for summary judgment on the procedural due process claim. The district court granted summary judgment in favor of the City, and it apparently assumed that there were no other remaining federal claims. The district court then declined to exercise jurisdiction over the remaining pendant state law claims. With such a disposition, the district court granted a dismissal of the action. County Line then brought the present appeal.

We now turn to County Line's claim that its constitutional rights have been violated by the City of Grand Prairie.

## II. DISCUSSION

### A. Procedural Due Process

In an attempt to delineate the relationship between property owners' rights and

---

1. The Hon. Robert W. Porter, Chief United States District Judge for the Northern District of Texas.

2. The city zoned the property for commercial use. However, an SUP, as an amendment to the zoning ordinance, in this case permitted the sale of alcoholic beverages where they could not otherwise be sold.

3. Section B–713 provides as follows:
   A. All specific use permits approved in accordance with the provisions of this ordinance in its original form or as hereafter amended shall automatically terminate upon cessation of the use for a period of six months, regardless of the intention of the owner.
   B. Any specific use permit granted by the City Council shall automatically terminate if a

building permit has not been obtained on the premises within one year from the date the ordinance granting the specific use permit is adopted.
   C. On any tract of land for which a specific use permit has been granted and the use has ceased as of the date of this ordinance, such specific use permit shall automatically terminate six months after the adoption of this ordinance unless the use has been reinstated by that time.
   D. Specific use permits in existence as of the date of this ordinance shall automatically terminate one year from the date of this ordinance if a building permit has not been obtained by that time.
   Grand Prairie, Tex., Ordinances § B–713.

zoning ordinances, courts and commentators indicate that the existence of procedural due process rights depends upon how the court views zoning ordinances and decisions. D. Mandelker, J. Gerand & E. Sullivan, *Federal Land Use Law*, § 2.03 (1986); *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427 (1978). The City asserts that this court should view the City's conduct in adopting and applying § B–713 as a legislative act.

■ Generally, if the court views the governmental conduct as legislative, the property owner has no procedural due process rights. "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." 2 R. Rotunda, J. Nowak & J. Young, *Treatises on Constitutional Law: Substance and Procedure*, § 17.8, p. 251 (1986). The large number of people affected by the legislative process ensures that the legislature will act reasonably. *Rogin v. Bensalem Township*, 616 F.2d 680, 693–94 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

County Line urges this court to view the ordinance and its application under an administrative/adjudicative model. County Line argues that it has a protectable property interest in the SUP and that the City violated its right to procedural due process when the City considered and enacted the statute without giving County Line personal notice. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Further, County Line argues that the City violated County Line's right to procedural due process when the City failed to give County Line personal notice and a hearing prior to the time the ordinance operated to extinguish its SUP.

County Line also contends that the City violated its due process rights when the city secretary denied the requested licenses because County Line did not have the proper zoning.

■ If the action of the city council is viewed as administrative/adjudicative, procedural due process rights may attach. These procedural rights follow only if the landowner establishes a property right created by state or local law. The amount of process due depends upon the balancing of interests as enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976).[4]

Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general zoning decision which applies to a large group of interests. Conversely, a municipal body's action may be more likely termed adjudicative if an appointed group, such as a zoning board, makes a specific decision regarding a specific piece of property. *See Developments, supra.*

As a preliminary matter to resolving whether the city council acted in an administrative or legislative capacity in enacting the ordinance, we review this court's decisions in *South Gwinnett Venture v. Pruitt*, 491 F.2d 5 (5th Cir.) (en banc), *cert. denied*, 416 U.S. 901, 94 S.Ct. 1625, 40 L.Ed.2d 119, *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974); *Couf v. DeBlaker*, 652 F.2d 585 (5th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982); and *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.) (en banc), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, *cert. denied*, —— U.S. ——, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986).

In *Pruitt*, the plaintiffs/appellants owned land zoned partially for residential use and partially for commercial use. The landowners sought to have the property

4. The court in *Mathews* identified three interests which must be balanced. Those factors are as follows:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the proba-

ble value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

rezoned to accommodate apartments. The local planning commission recommended the change, but the county commissioners denied the request. The landowners asserted that the county commissioners violated the owners' rights to equal protection and due process of law when the commission, according to the owners, failed to explain the basis for its decision. The court, en banc, held that "local zoning is a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action." 491 F.2d at 7. The court went on to hold that this view is applicable to the adoption of comprehensive zoning plans as well as the reclassification of a particular piece of property.

Thus, *Pruitt* expresses the viewpoint that a zoning decision, made by an elected body such as a county commission, should be deemed legislative, not administrative.

In *Couf*, a developer purchased waterfront property with the intent of building condominiums. At the time of purchase, the zoning permitted the desired building. However, by the time the developer finally applied for a building permit, the city commission instructed the planning commission that all property on the waterfront, including the developer's property, be "down zoned," and the planning commission should refuse to accept applications for building permits. The developer asserted that he was deprived of his property without due process of law.

The court determined that *Pruitt* controlled the disposition of the procedural due process claim. The court stated as follows:

Our opinions repeatedly characterize local zoning decisions as "legislative" in nature. (Citations omitted.) If this word is used advisedly—as it appears to be—then the plaintiffs cannot complain of a denial of procedural due process, for no constitutional limitation on legislative procedure is relevant here. (Citations omitted.)

652 F.2d at 590. Again, this court reaffirmed its view that zoning decisions, at least those made by elected bodies, are

legislative, thus no procedural due process rights apply.

In *Shelton*, the landowner sought a variance for the parking requirements which would be enforced if the landowner changed the type of business conducted on the premises. 780 F.2d at 477. All three attempts to convince the city zoning board to grant the variance failed. The landowner then brought suit, claiming a violation of substantive and procedural due process. The en banc court in *Shelton* not only reaffirmed the view that the procedural aspect of zoning decisions are viewed under the legislative model but also considered, at great length, whether a claim of substantive due process violation should be viewed under the legislative or administrative model. The court flatly rejected the administrative model in favor of the legislative model.

The dissent in *Shelton* took issue with the majority's conclusion that a zoning board of adjustment, as an appointed body with limited power, could be cloaked with the deference given to legislative actions. The dissent contended that an appointed body making specific decisions regarding specific property ought to be held to a higher standard. *See* 780 F.2d at 488 (Rubin & Tate, J.J., dissenting).

Although we recognize that circumstances may arise in which the zoning decision of a governmental body, such as a county commission or a city council, may require some procedural due process, the circumstances presented in this case do not call for such a ruling.

■ The enactment of the ordinance was a result of a purely legislative act by the city council of Grand Prairie, an elected body which wields broad power to make a decision in the area of city planning and zoning. The ordinance in question applies generally to all SUPs in existence and those thereafter created. County Line presented no evidence that the city council aimed the ordinance specifically at County Line rather than calling for termination of all SUPs which had suffered non-use for a period of at least six months. Because the city council possesses extensive legislative

powers and had enacted an ordinance general in scope, we must apply the legislative model to the ordinance here in question and reject County Line's argument that it has a cognizable claim for relief for violation of procedural due process.

■ County Line's alternative argument—that the action by the city secretary deprived it of procedural due process—lacks any merit. The city secretary possessed no power to make zoning decisions. Thus, her decision had no effect on the existence or non-existence of the SUP. Indeed, the city secretary's decision could very well have been wrong.

This case has similarities to the circumstances revealed in *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). In *Texaco,* owners of severed mineral interests appealed the application of an Indiana statute which automatically extinguished a mineral interest if not used for a period of twenty years.[5] The statute did not provide for notice to the owner of the mineral estate prior to the lapse, but it did provide that the surface owner may give notice to the mineral owner subsequent to the lapse.

The mineral interest owners argued a denial of procedural due process, first because the state failed to notify them of the requirements of the new law, and second because the statute did not require the surface owner to give notice prior to the lapse. The Supreme Court found no merit in either argument.

The Court rejected the argument that the mineral owner should have been given notice of the requirements of the new law even though the owner establishes a property interest. The Court stated that "[i]t is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property."[6] *Id.* at 532, 102 S.Ct. at 793 (citing *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925).

After holding that the mineral interest owners were presumed to know the contents of the lapse statute, the Court addressed the issue of whether, given that knowledge, the owners were entitled to a pre-lapse notice from the surface owners. *Id.* 454 U.S., at 533, 102 S.Ct. at 794. The Court, after noting the difference between a self-executing statute and a subsequent judicial determination of a lapse, determined that the mineral interest owner is not entitled to notice of the application of the self-executing statute. In doing so, the Court held that the notice requirements of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), were inapplicable. As the Court in *Texaco* stated:

> The reasoning in *Mullane* is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-

---

**5.** The Indiana statute, known as the Mineral Lapse Act, Ind. Code §§ 32–5–11–1 to 8 (1976), provides that the owner of the mineral interest who fails to use the interest for a period of twenty years automatically loses the interest, with the interest reverting back to the surface owner. A use of the interest includes the actual or attempted production of minerals, or the paying of taxes or royalties. The owner could also prevent a lapse if the owner files a statement of claim with the local recorder of deeds.

**6.** The Court in *Texaco* also stated that "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." 454 U.S. at 532, 102 S.Ct. at 793. The Court found that the two-year grace period, which allowed a mineral interest owner to protect an interest which would otherwise

lapse upon the effective date of the statute, foreclosed any argument that the mineral interest owners did not have a reasonable opportunity to familiarize themselves with the law. In this case, the City did not provide a grace period. Rather, non-use for a six-month period after the effective date of the ordinance resulted in automatic extinguishment of the SUP. In light of the interest involved in this case, an SUP, compared with the interest involved in *Texaco,* a fee in the mineral interest, we determine that the six-month period in which County Line should have informed itself of the ordinance to be reasonable, particularly because the City gave public notice of its consideration and subsequent adoption of the ordinance. *See id.* (courts should show great deference to legislative judgment regarding adequacy of grace period).

executing feature of the Mineral Lapse Act. The due process standards of *Mullane* apply to an "adjudication" that is "to be accorded finality." The Court in *Mullane* itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property.

454 U.S. at 535, 102 S.Ct. at 795 (footnote omitted).[7]

County Line may have rights flowing from existing administrative remedies. Before opening for business, County Line must obtain a certificate of occupancy. Grand Prairie, Tex., Ordinances § B–1001. To obtain a certificate, the premises must be properly zoned. *See id.* If the City denies County Line's application for failure to have proper zoning (no SUP), the denial could be appealed to the zoning board of adjustment and appeals. In this way, the zoning board would have the jurisdiction and opportunity to hear the issue of the SUP extinguishment. If County Line obtained no relief from the zoning board, it could appeal the matter in state court. In this way, the decision of the zoning board and that of the courts are "to be accorded finality" and at these stages, we presume County Line will be given an opportunity to be heard. *See Texaco,* 454 U.S. at 535, 102 S.Ct. at 795.

### B. Other Federal Claims

From a review of the pleadings we determine that, in addition to its procedural due process claim, County Line asserts that the ordinance violates County Line's rights to substantive due process and equal protection by being arbitrary and capricious and further that the termination constitutes an improper taking under the fifth and fourteenth amendments. County Line also asserts pendant state law violations. Both parties moved for summary judgment on the issues of procedural due process and

state law violations. The district court's opinion did not address the other federal claims asserted by County Line. Thus, the claims are still pending before the district court. We observe that the district court may stay consideration of additional claims pending exhaustion by County Line of its administrative remedies, if any, or the district court may proceed to resolve these remaining matters.

### III. CONCLUSION

Accordingly, we affirm the district court's grant of summary judgment for the City on the procedural due process issue. We remand the case for further consideration of the other federal claims and state claims pending any further administrative proceedings initiated by the appellant. AFFIRMED IN PART AND REMANDED IN PART.

---

7. The Court similarly rejected the owners' argument that they were entitled to specific notice and hearing based on *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (notice and hearing before driver's license suspension); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (notice and hearing before pre-judgment replevin order); *Memphis Light,*

*Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (notice and hearing before termination of service by public utility). The Court noted that the above cases are different because, in those cases, the interests were "taken only after a specific determination that the deprivation was proper." 454 U.S. at 537, 102 S.Ct. at 796 (footnote omitted).