In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3062

L C & S, Inc., et al.,

Plaintiffs-Appellants,

v.

Warren County Area Plan Commission, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 99 C 51--Rudy Lozano, Judge.

Argued January 11, 2001--Decided March 28, 2001

Before Flaum, Chief Judge, and Cudahy and Posner,
Circuit Judges.

Posner, Circuit Judge.  "Legislative due process"
seems almost an oxymoron. Legislation is
prospective in effect and, more important,
general in its application. Its prospective
character enables the persons affected by it to
adjust to it in advance. Its generality offers
further, and considerable, protection to any
individual or organization that might be the
legislature's target by imposing costs on all
others who are within the statute's scope. The
prospect of such costs incites resistance which
operates to protect what might otherwise be an
isolated, vulnerable, politically impotent target
of the legislature's wrath or greed. The
mechanism of protection is similar to that
provided by the principle of equal protection of
the laws. Equal protection limits the power of a
legislature to target a particular individual,
organization, or group by requiring that the
legislature confer benefits or impose costs on a
larger, neutrally defined group; it cannot pick
on just the most vulnerable. Prospectivity and
generality of legislation are key elements of the
concept of the rule of law, a concept that long
predates either the principle of equal protection
(though there is a resemblance) or the concern
with procedural regularity embodied in our modern
concept of due process of law. The right to

notice and a hearing, the essence of that concept, are substitutes for the prospectivity and generality that protect citizens from oppression by legislators and thus from the potential tyranny of electoral majorities. The generality of legislation makes notice by service or otherwise impracticable; many of the persons affected by the legislation will be unknown and unknowable.

Unfortunately the line between legislation and adjudication is not always easy to draw, especially when the extent of the legislative domain is extremely limited, as is often the case with zoning. In our Club Misty case, the domain was a specific street address. The Illinois legislature had authorized the voters of each Chicago precinct to decide by electoral majority, with no pretense of due process, to forbid the sale of liquor at an address designated by the voters. The seller's right to remain in business at his address was thus at the sufferance of the voters, exercising a delegated legislative power that seemed to us, in reality, a judicial power akin to the power to abate a nuisance. Club Misty, Inc. v. Laski, 208 F.3d 615 (7th Cir. 2000); compare Harris v. County of Riverside, 904 F.2d 497, 504-05 (9th Cir. 1990). We concluded that the legislation deprived sellers of alcoholic beverages of a property right consisting of their license, without due process of law. We did not reach the plaintiffs' alternative claim that the legislation was a bill of attainder, that is, legislative punishment. The bill of attainder clause, U.S. Const., art. I, sec. 10, cl. 1, evinces recognition of the impropriety of legislatures' stepping outside their proper role and into the judicial role, but the scope of the clause is quite narrow, see 208 F.3d at 617, and, as Club Misty makes clear, does not preempt a due process challenge based on similar concerns.

The plaintiffs claim that this case is like Club Misty. Williamsport, population 1800, is the county seat of Warren County, Indiana, a rural county in the west central part of the state. In 1996 the plaintiffs obtained from the state a liquor license for use in Williamsport, and they leased a building in anticipation of opening a restaurant in it where liquor would be served. The building was in a part of the town zoned for commercial use, and the operation of a "tavern" was a permitted use in that zoning district, meaning that the permission of the zoning board was not required. In 1998, before the plaintiffs' restaurant had opened, rumors swept Williamsport that a topless bar, or perhaps even a gay bar, was coming to the town--and that in fact it would be opening in the building the plaintiffs had

leased, so presumably would be operated by them. So far as appears, there was no basis for the rumors. They were not even plausible, since topless (or at least fully topless) bars are illegal in Indiana (see Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991)) and small country towns are unlikely venues for openly homosexual conclaves. Nevertheless, in response to the rumors the county's planning commission (one of the defendants) recommended that the town council amend its zoning ordinance to make "taverns" "special exceptions" to the uses permitted in the commercial zoning district. This would require the plaintiffs, if they wanted to open a "tavern" in the building they had leased, to apply to the planning commission's board of zoning appeals for permission. The town council amended the ordinance accordingly, but grandfathered the only existing bar in Williamsport.

 Neither the planning commission nor the town council notified the plaintiffs of the change in the ordinance. When the plaintiffs discovered what had happened they applied for a special exception for their proposed "tavern." At the hearing before the board of zoning appeals they denied intending to open either a topless or a gay bar. Nevertheless their application for a special exception was turned down, so far as appears without any statement of reasons. The plaintiffs did not appeal, as they could have done by bringing suit in an Indiana state court. Ind. Code sec. 36-7-4-1003. Instead they brought this federal constitutional suit, claiming that the amendment to the zoning ordinance had deprived them of property without due process of law and also that the term "taverns" in the amendment was void for vagueness. The district court granted summary judgment for the defendants.

 The plaintiffs argue that the amending of the ordinance, though nominally a legislative act, should be treated as adjudicative because it was aimed solely at them and constituted in effect an adverse "judgment" based on a "finding" that they intended to open a topless or gay bar. They were, therefore, the argument continues, entitled to notice of the proposed amendment and an opportunity for a hearing on the proposal. To complete their due process argument they claim that the effect of the ordinance was to take away a property right, the right granted by the state to sell liquor in Williamsport. This is doubtful, but it will be convenient to postpone consideration of the property question for a bit.

 That the plaintiffs were the target, and so far as appears the only target, of the amendment is plain. The ordinance was amended solely because

of rumors that they were intending to use their liquor license and building lease to open either a topless bar or a gay bar, either use being anathema to the burghers of Williamsport. But this does not establish that the amendment was not a bona fide legislative measure. It is utterly commonplace for legislation to be incited by concern over one person or organization. The Sherman Act, for example, was intended in large measure to curb John D. Rockefeller's Standard Oil Trust, and, sure enough, some years after it was passed a successful suit was brought under it to dismember the trust. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1 (1911).

 Williamsport cannot be criticized for having taken a long time to wake up to the need to treat taverns differently from other commercial establishments. The rumors, unfounded though they were, operated as a wake-up call. Because of the association noted by one of the Justices in Barnes between striptease and prostitution, 501 U.S. at 582-88 (concurring opinion), a topless bar can strain the resources of a small town's police force. Gay bars can require increased law enforcement as well; they may become sites of male prostitution and arouse the hostility of "straights." The consumption of alcohol, particularly in public places, is a rich source of social problems, of which toplessness and the flaunting of homosexual preference may be far from the most serious, yet these exotic venues for the sale of alcoholic beverages may have stimulated a sharp if belated awareness of the problematic character of adding to the number of local taverns. There is as yet no constitutional right to operate or patronize either type of bar; and the plaintiffs do not challenge the amendment as a denial of equal protection on the theory that the defendants singled out the plaintiffs for adverse treatment out of unreasoned hostility. Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam), Hilton v. City of Wheeling, 209 F.3d 1005 (7th Cir. 2000); Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000); Gelb v. Board of Elections, 224 F.3d 149, 157 (2d Cir. 2000).

 Not the motive or stimulus, but the generality and consequences, of an enactment determine whether it is really legislation or really something else. If the Williamsport town council had imposed a fine on the plaintiffs, or provided that only the plaintiffs had to apply for permission to operate a tavern in the town's commercial district, the amendment would have lacked either prospectivity (in the first example) or generality (in the second); it might even have been a bill of attainder. But the

amendment operated prospectively, regulating a future use but not imposing a sanction for past conduct. Far from being punitive, the amendment is not even prohibitory. It subjects taverns to regulation; it does not ban them. And it applies to anyone who might want to open a new tavern in Williamsport, not just the plaintiffs. There must be a market demand for a second tavern in the town; otherwise the plaintiffs would not have sought a liquor license for use in Williamsport or leased the building. No doubt, therefore, someone else will want to open a tavern in Williamsport, and that someone else will have to apply to the board of zoning appeals for a special exception, just as the plaintiffs had to do. Obviously the domain of this legislation is limited, but it is limited basically by the size of Williamsport. It cannot be the law that small towns cannot legislate because they are likely to know just who is likely to be hurt by the legislation, and the who may indeed be singular.

We conclude that the amendment to the ordinance was bona fide legislation; therefore no notice or opportunity to be heard was constitutionally required.

The foregoing discussion implies, moreover, that the amendment to the ordinance did not deprive the plaintiffs of property within the meaning of the due process clause of the Fourteenth Amendment. The liquor license was, we may assume, their property within the amendment's meaning, Club Misty, Inc. v. Laski, supra, 208 F.3d at 618-19; Reed v. Village of Shorewood, 704 F.2d 943, 948-49 (7th Cir. 1983); Brookpark Entertainment, Inc. v. Taft, 951 F.2d 710, 716 (6th Cir. 1991), but it was not taken away from them. The grant of the license did not preempt local zoning laws. A liquor licensee is always at risk that he will not be able to use the license because he can't find suitable premises zoned for the sale of liquor. He has no right, vested or otherwise, to freeze zoning law as of the date on which he obtains the license. He assumes the risk that the zoning laws will be tightened up and make it more difficult for him to use his license. That is all that happened here. The amendment to the ordinance did not revoke the license that is the claimed property right; it curtailed an expectation of unchanged zoning law, and such an expectation is not a property right, River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994), or even reasonable.

Our conclusion that the amendment did not deprive the plaintiffs of a property right or deny them due process of law does not leave people in their position remediless against rural

prejudice, if that is how the defendants'
response to the baseless rumors of an impending
challenge to local moral sentiment should be
interpreted. The plaintiffs could have appealed
the zoning decision to an Indiana court. Perhaps
they still can, by reapplying for the special
exception and, if it is again denied, appealing
that denial. We need not speculate on whether
they would be met by a defense of res judicata,
or whether the defendants' statement in oral
argument that they would not be should be treated
as a waiver of that defense.

 The plaintiffs' second claim, that the word
"tavern" in the ordinance is unconstitutionally
vague, borders on the frivolous. The
constitutional concept of vagueness is
successfully invoked only in cases in which a
vague statutory term either has an in terrorem
effect or licenses uncabined discretion by police
or other public officers, thus inviting abuse.
See, e.g., Grayned v. City of Rockford, 408 U.S.
104, 108-09 (1972); Karlin v. Foust, 188 F.3d
446, 458-59 (7th Cir. 1999); Okpalobi v. Foster,
190 F.3d 337, 357-58 (5th Cir. 1999). Neither
danger is presented here. No one, and certainly
not the plaintiffs, would dare to open a
restaurant at which liquor is served without
applying for a special exception, on the theory
that such an establishment might not be
classified as a "tavern." The plaintiffs applied
for the exception knowing that their
establishment was quite likely, indeed quite
certain, to be classified as a tavern. They could
by appealing the denial of their application have
sought a narrowing interpretation of "tavern"
from the Indiana courts, whose interpretation of
the word whether broad or narrow would have
resolved any doubts about the meaning of
"tavern." They did not.
Affirmed.


 Cudahy, Circuit Judge, concurring in part and
concurring in the judgment. Although the majority
opinion is persuasive, I am not convinced that
the first branch of the plaintiffs' procedural
due process argument must fail here. In form and
in potential effect, the zoning amendment at
issue here was, as the majority points out, of
general application. On the specific facts of
this case, however, the amendment was designed to
apply to these plaintiffs, had no current
application to anyone else and, at least
arguably, these facts were known to the
defendants. Therefore, although legislative in
form, the amendment was essentially adjudicative
in application. In Harris v. County of Riverside,
a leading case cited by the majority, the Ninth

Circuit said:

> In determining when the dictates of due process apply . . . we find little guidance in formalistic distinctions between "legislative" and "adjudicatory" or "administrative" government actions. As the Supreme Court impliedly recognized in Bi-Metallic [Inv. Co. v. State Bd. of Equalization, 239 U.S. 441 (1915)], the character of the action, rather than its label, determines whether those affected by it are entitled to constitutional due process.

904 F.2d 497, 501-02 (9th Cir. 1990). See also Nasierowski v. City of Sterling Heights, 949 F.2d 890, 896 (6th Cir. 1991) ("Government determinations of a general nature . . . do not give rise to a due process right . . . . But when a relatively small number of persons is affected on individual grounds, the right to a hearing is triggered.").

These observations would suggest reversal here if the plaintiffs had been deprived of property within the meaning of the Due Process Clause of the Fourteenth Amendment. However, the immediate effect of the Tavern Amendment was to subject the plaintiffs to additional regulation, not to deprive them of property. For this and other reasons cited in the majority opinion, the plaintiffs have not been able to make their case that they have been deprived of a property interest. This is an essential part of the showing required on summary judgment and I therefore join in the judgment.