[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2003
THOMAS K. KAHN
CLERK**

No. 02-15217

D. C. Docket No. 02-21033 CV-JLK

75 ACRES, LLC,

Plaintiff-Appellant,

versus

MIAMI-DADE COUNTY, FLORIDA,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(July 25, 2003)**

Before ANDERSON and COX, Circuit Judges, and NANGLE [*], District Judge.

COX, Circuit Judge:

---

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

75 Acres, LLC, appeals the district court's final judgment dismissing its action against Miami-Dade County. 75 Acres brought this action against Miami-Dade County ("the County") under 42 U.S.C. § 1983, contending that § 33-319(k) of the Miami-Dade County Code is facially unconstitutional because it requires the County Manager to impose a building moratorium on certain parcels of real property without affording the procedural due process protections guaranteed by the Fourteenth Amendment of the United States Constitution and by Article I, Section 9 of the Florida Constitution. Because we agree with the district court that the imposition of an administrative building moratorium pursuant to § 33-319(k) is a legislative act that does not implicate procedural due process protections, we affirm the district court's final judgment granting the County's motion to dismiss.

## I. BACKGROUND

In 1999, Cosmos, Inc. applied to Miami-Dade County to rezone an 80-acre tract of real property.[1] The County's Community Zoning Appeals Board 11 ("the Zoning Appeals Board") conducted a public hearing to consider Cosmos's request, and the Zoning Appeals Board approved the rezoning in October 1999. In March 2000, about five months after the rezoning was approved, 75 Acres purchased the

---

[1] Our recitation of the facts is drawn from the complaint and accepts 75 Acres' well-pleaded factual allegations as true. *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).

property from Cosmos. Approximately one month later, 75 Acres agreed to sell a 26-acre tract of the property to Bean Family Investments, Ltd. ("Bean"), which planned to construct and operate an automobile dealership on the property. The sale agreement between 75 Acres and Bean was contingent upon 75 Acres' success in obtaining approval to rezone the property to a classification acceptable to Bean, which in turn was contingent upon the rezoning approval first obtained by Cosmos in October 1999.

Before 75 Acres could obtain the rezoning that Bean desired, the County Manager imposed an administrative building moratorium on the property. A criminal information had been filed by the State Attorney charging Manuel Vera, a member of the Zoning Appeals Board, with accepting unlawful compensation as consideration for votes he cast to re-zone the property in October 1999 when the property was owned by Cosmos. Pursuant to § 33-319(k)(1) of the Miami-Dade County Code,[2] the

---

[2]    Section 33-319(k)(1) of the Miami-Dade County Code provides, in pertinent part:

(1) As soon as the County Manager learns that a grand jury has indicted or that an information has been formally returned against a . . . Zoning Appeals Board member charging said . . . member with bribery, accepting unauthorized compensation, or other act of fraud in a zoning case relating to a particular parcel or parcels of real property, then the County Manager shall immediately issue an administrative order identifying the real property in question and prohibiting the issuance of building permits for said property.

Miami-Dade County, Fla. Code § 33-319(k)(1).

3

County Manager was required to issue an administrative order prohibiting the issuance of building permits on 75 Acres' property as soon as the County Manager learned that an information had been returned charging Vera with accepting unlawful compensation in a zoning case related to that property.

On December 28, 2000, the County sent a memorandum to 75 Acres that informed 75 Acres of the charges against Vera and the imposition of the building moratorium. Prior to receiving that memorandum, 75 Acres had not been informed of the charges filed against Vera nor had 75 Acres been given an opportunity to challenge the imposition of the moratorium. Once the building moratorium was imposed, 75 Acres had two options: it could await the conclusion of Vera's criminal proceeding,[3] or it could seek a reconsideration hearing under § 33-319(k)(2) to obtain

---

[3] Section 33-319(k)(1) also provides:

> Such order of moratorium shall remain in effect until the completion of the criminal judicial process and the determination of guilty or not guilty as to the . . . Zoning Appeals Board member involved being reviewed by the highest judicial tribunal to consider the case. Should the . . . Zoning Appeals Board member be found not guilty, then the administrative order shall be deemed dissolved. Should the . . . Zoning Appeals Board member be found guilty, then a motion to reconsider the zoning on the real property in question may properly be made by any . . . Zoning Appeals Board member.

Miami-Dade County, Fla. Code § 33-319(k)(1).

4

relief from the moratorium.[4]  If 75 Acres asked for a reconsideration hearing, a hearing would be granted only if (1) a member of the Zoning Appeals Board made a motion to reconsider the zoning and (2) the motion was approved.  If the Zoning Appeals Board approved the motion for reconsideration, a hearing would be conducted as provided by § 33-319(k)(3)[5] and, at its conclusion, the Zoning Appeals Board would either reaffirm the existing zoning classification or rezone the property, and the moratorium would automatically dissolve.[6]

---

[4]     Section 33-319(k)(2) of the County Code provides:

> (2) If an order of moratorium is imposed on a parcel or parcels or real property pursuant to this subsection, and the owner or owners of such property request the . . . Zoning Appeals Board[] to reconsider the zoning on that property, then a motion to reconsider the said zoning may properly be made by any . . . Zoning Appeals Board member.  If the motion to reconsider is approved by the . . . Zoning Appeals Board and the reconsideration of the zoning on the said property occurs, then the building moratorium shall end with the conclusion of the reconsideration process delineated . . . in Subsection (3).

Miami-Dade County, Fla. Code § 33-319(k)(2).

[5]     Section 33-319(k)(3) describes, in some detail, the procedures for conducting a reconsideration hearing.  In pertinent part, this section states:

> The sole issue to be considered by the . . . Zoning Appeals Board shall be whether the present zoning on the subject property is appropriate.  In determining this issue, the . . . Zoning Appeals Board shall be guided by the standards and guides specified in this chapter. . . . [The] Zoning Appeals Board after considering the items delineated herein and the criteria specified in this chapter, shall by resolution either reaffirm the existing zoning or rezone the subject property.

Miami-Dade County, Fla. Code § 33-319(k)(3).

[6]     The record on appeal contains information regarding 75 Acres' reconsideration request and the Zoning Appeals Board's response, but this information is not included in the complaint because it became available after the complaint was filed.  Because we hold that the

5

Because of the building moratorium, 75 Acres was unable to proceed with its anticipated development of the property and could not close the sale to Bean. 75 Acres already had expended over $4.65 million to develop the property. Bean, to whom 75 Acres was contractually obligated to sell the property after the requisite zoning changes were obtained, had expended or allocated in excess of $900,000 to develop the property. Furthermore, 75 Acres' predecessor-in-interest, Cosmos, had expended $406,000 to make improvements on the property.

## II. PROCEDURAL HISTORY

On April 4, 2002, 75 Acres filed suit against the County, asserting a claim under 42 U.S.C. § 1983. In Count One, 75 Acres alleges that § 33-319(k) of the Miami-Dade County Code is facially unconstitutional on Fourteenth Amendment procedural due process grounds. Specifically, 75 Acres alleges that § 33-319(k) denies procedural due process in five ways: (1) it imposes a moratorium of indefinite duration that deprives owners of all meaningful use of their property without providing pre-deprivation notice and a pre-deprivation hearing; (2) it deprives owners of a property interest based solely on the alleged culpability of a member of the

imposition of a moratorium under § 33-319(k) is a legislative act that does not implicate procedural due process requirements at all, we need not consider whether it would be appropriate, in evaluating the County's motion to dismiss, to look beyond the four corners of the complaint in order to take into account the undisputed facts surrounding 75 Acres' reconsideration request.

6

Zoning Appeals Board; (3) the purported post-deprivation remedy, a reconsideration hearing, does not permit property owners to challenge the initial validity of the moratorium; (4) the Zoning Appeals Board has unfettered discretion to deny a property owner's request for a reconsideration hearing; and (5) the Zoning Appeals Board has unlimited authority to rezone the property at the reconsideration hearing, thus forcing property owners to choose between awaiting the conclusion of the criminal proceedings and seeking a reconsideration hearing at which the Zoning Appeals Board might rezone the property to a less desirable classification. In Count Two, 75 Acres reiterates the same procedural due process challenges and argues that § 33-319(k) violates Article 1, Section 9 of the Florida Constitution. Based on these allegations, 75 Acres seeks an injunction that would declare § 33-319(k) unconstitutional and would enjoin the County from invoking or enforcing that section.

The County filed a motion to dismiss which it asked the district court to consider, in the alternative, as a motion for summary judgment. In its motion, the County contended that the imposition of a building moratorium under § 33-319(k) is a legislative action, and as a consequence, procedural due process requirements do not apply (or, more accurately, the legislative process provides all the process that is constitutionally due). The County also argued that even if the moratorium provision

were subject to procedural due process requirements, the reconsideration procedure established in § 33-319(k)(2) provides a constitutionally-adequate post-deprivation remedy.

75 Acres conceded that a legislative action does not implicate procedural due process, but argued in response that the imposition of a building moratorium under § 33-319(k) is not properly characterized as a legislative act. To support this assertion, 75 Acres argued that the building moratorium at issue was not one "of general applicability" but instead was targeted on a particular property, the property owned by 75 Acres. Therefore, in 75 Acres' view, the imposition of a moratorium under § 33-319(k) is subject to procedural due process requirements. 75 Acres also challenged the constitutional adequacy of the post-deprivation reconsideration procedure.

Following a hearing, the district court granted the County's motion to dismiss. The court based its order on two conclusions. First, the court held that the imposition of a building moratorium under § 33-319(k) is a legislative action and therefore procedural due process protections did not apply. The court observed that the County Manager does not exercise any discretion in imposing a moratorium under § 33-319(k), and further noted that 75 Acres did not dispute that a criminal information had been returned charging a Zoning Appeals Board member with accepting unlawful

consideration in return for votes he cast to re-zone 75 Acres' property. The court also rejected 75 Acres' argument that § 33-319(k) is not a statute "of general applicability," reasoning that the statute is applicable to all properties even though it was applied to a specific property in this case. Second, the court concluded that even if the imposition of a moratorium were subject to procedural due process protections, the reconsideration procedure is constitutionally adequate. Accordingly, the court granted the County's motion to dismiss, and 75 Acres appeals.

## III. ISSUE ON APPEAL & STANDARD OF REVIEW

The only issue on appeal is whether the district court erred when it granted the County's motion to dismiss. We review a district court's order granting a motion to dismiss de novo. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In evaluating such a motion, we accept the factual allegations in the complaint as true and we construe them in the light most favorable to the plaintiff. *Hill*, 321 F.3d at 1335.

## IV. DISCUSSION

Our opinion proceeds in three parts. In Part A, we examine the distinction between legislative action and adjudicative action and identify the legal principle that

9

guides our procedural due process analysis: when a governmental body enacts a law of general applicability in its legislative capacity, the property owner generally is not entitled to procedural due process above and beyond that which already is provided by the legislative process. Although both parties submit to this principle, they vigorously dispute whether the imposition of a building moratorium under § 33-319(k) is a legislative action, and we briefly summarize their arguments in Part B. Then, in Part C, we review relevant caselaw to evaluate their contentions and conclude, as the district court did, that the automatic imposition of a building moratorium pursuant to § 33-319(k) does not require the County to afford individual procedural due process protections to affected property owners.

A.    *Overview*

Almost one hundred years ago, in a pair of cases addressing taxation in Denver, Colorado, the Supreme Court first crystallized the important distinction in procedural due process cases between government conduct that is primarily legislative and conduct that is primarily adjudicative. In the first case, *Londoner v. City & County of Denver*, 210 U.S. 373, 28 S. Ct. 708 (1908), the Court was called upon to examine whether the Denver city council, acting as a board of equalization, violated due process when it failed to provide a group of landowners with a hearing before assessing a tax for the cost of paving a street that abutted their property. The Court

10

concluded that due process was violated in such a circumstance because a subordinate body, the city council, had been given "the duty of determining whether, in what amount, and upon whom [the tax] shall be levied, and of making its assessment and apportionment." *Id.* at 385-86, 28 S. Ct. at 714.

Just eight years later, however, in *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 36 S. Ct. 141 (1915), the Court was asked to examine an order of the State Board of Equalization which required the local taxing officer in Denver to increase by 40 percent the assessed value of all taxable property in the city. In concluding that the order did not violate due process despite the Board of Equalization's failure to provide individual taxpayers with an opportunity to be heard, the *Bi-Metallic* Court drew a distinction between the adjudicative act of the city council in *Londoner* and the legislative act of the Tax Commission in *Bi-Metallic.* The public improvement assessment at issue in *Londoner* concerned "[a] relatively small number of persons," they were "exceptionally affected," and "in each case upon individual grounds." *Bi-Metallic*, 239 U.S. at 446, 36 S. Ct. at 142. By contrast, the "across-the-board" valuation increase in *Bi-Metallic* applied equally to all landowners in Denver, prompting the Court to observe:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town

11

meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Id.* at 445, 36 S. Ct. at 142.

The Supreme Court's statements in *Londoner* and *Bi-Metallic* years ago have served as the foundation for a strikingly uniform approach to procedural due process. Under that approach, if government action is viewed as legislative in nature, property owners generally are not entitled to procedural due process. Or, as one set of commentators has summarized, "When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process – the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees." Ronald E. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 17.8 (3d ed. 1999). By contrast, if government conduct is viewed as adjudicative in nature, property owners may be entitled to procedural due process above and beyond that which already has been provided by the legislative process. When an adjudicative act deprives an individual of a constitutionally-protected interest, procedural due process is implicated, and a court would apply the familiar three-part balancing test articulated in *Mathews v. Eldridge*,

424 U.S. 319, 96 S. Ct. 893 (1976), to determine the dictates of due process in that particular situation.[7]

This circuit has acknowledged the distinction between legislative and adjudicative action, and we have regularly applied this principle in procedural due process cases. *See, e.g., Peterman v. Coleman*, 764 F.2d 1416, 1419 (11th Cir. 1985); *Couf v. DeBlaker*, 652 F.2d 585, 590 (5th Cir. Unit B 1981); *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir. 1974) (en banc).[8] Mindful of the important distinction between legislative action and adjudicative action in evaluating a procedural due process claim, we now turn to the hotly disputed issue of whether the imposition of a building moratorium under § 33-319(k) of the County Code is a legislative act.

B. *Contentions of the Parties*

75 Acres argues that the imposition of a building moratorium by the County Manager, following the State Attorney's filing of a criminal information, constitutes

---

[7] The *Mathews* test directs courts to balance (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation and the probable value, if any, of additional or substitute safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that would be imposed by the additional or substitute safeguards. *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903.

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), this court adopted as binding precedent all Fifth Circuit decisions issued prior to the close of business on September 30, 1981. *Id.* at 1207.

an adjudicative act that implicates procedural due process. First, 75 Acres contends that the imposition of a moratorium on its property does not reflect a general statement of legislative policy, but instead amounts to a specific application of a general policy that warrants procedural due process protection. In support of this proposition, 75 Acres cites the Supreme Court's decision in *Londoner*, in which the Court characterized a public improvement assessment as an adjudicative act because the assessment exceptionally affected a small number of persons on individual grounds and because the duty of determining who was affected and to what extent was committed to a subordinate body.

Next, 75 Acres cites Justice Blackmun's remarks in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S. Ct. 2467 (1980), regarding the purpose of procedural due process to argue that the State Attorney's pivotal role in filing the criminal information implicates procedural due process protections. Justice Blackmun wrote in his *O'Bannon* concurrence that "[p]rocedural due process seeks to ensure the accurate determination of decisional facts, and informed unbiased exercises of official discretion." *Id.* at 797, 110 S. Ct. 2481-82 (Blackmun, J., concurring in the judgment). Based on this understanding of the objectives of procedural due process, 75 Acres suggests that the State Attorney first makes a determination of decisional facts (regarding the Zoning Appeals Board member's

14

culpability) and then exercises official discretion (namely, prosecutorial discretion) in filing the criminal information that triggers the moratorium under the County Code. As a consequence, 75 Acres argues, the State Attorney's factual determinations and exercise of prosecutorial discretion place the imposition of a moratorium under § 33-319(k) outside the realm of legislative acts and entitles property owners to procedural due process.[9]

Lastly, 75 Acres attempts to distinguish this case from the Fifth Circuit's decision in *County Line Joint Venture v. City of Grand Prairie*, 839 F.2d 1142 (5th Cir. 1988), upon which the district court placed significant reliance. In *County Line*, the Fifth Circuit held that a holder of a specific use permit, which permitted the holder to sell alcoholic beverages, was not deprived of procedural due process when the permit was automatically extinguished following six months of nonuse as provided by a city ordinance. *Id.* at 1145, 1146. 75 Acres contends that the decision in *County Line* was dictated by the fact that the city ordinance in that case was "self-executing," and 75 Acres argues that § 33-319(k) is not self-executing because the

---

[9] Notably, 75 Acres does not suggest that the County Manager engages in any determinations of decisional facts, nor does 75 Acres suggest that the County Manager exercises official discretion. Although 75 Acres asserted such an argument in the court below, the argument has been abandoned on appeal. *See United States v. Mejia*, 82 F.3d 1032, 1036 n.4 (11th Cir. 1996). Thus, we are asked only to consider whether the State Attorney's conduct renders the imposition of a moratorium under the County Code an adjudicative act.

15

imposition of a moratorium is triggered by the State Attorney's discretionary act of filing a criminal information.

The County's response can be reduced to two arguments. First, the County suggests that the imposition of a building moratorium is a non-discretionary act pursuant to an ordinance that applies to every parcel of real property in the County. Although the ordinance is only applied, in practice, to those parcels of real property that are implicated in a criminal information, the County argues that § 33-319(k) is a statute of general applicability. As a consequence, the County asserts that procedural due process protections do not apply.

Second, the County recharacterizes the State Attorney's role in the imposition of a moratorium. While 75 Acres portrays the State Attorney as making factual determinations and exercising official discretion, the County contends that the filing of a criminal information by the State Attorney (who is not a County employee and is not governed by County custom or policy for the purposes of 42 U.S.C. § 1983) should be viewed as merely a "legislatively-defined condition precedent" to the imposition of a moratorium. Citing *County Line*, the County argues that the

automatic deprivation of a property interest[10] upon the occurrence of a legislatively-defined condition precedent does not implicate due process.

C.    *Analysis*

We must decide whether the imposition of a building moratorium under § 33-319(k) is a legislative act or an adjudicative act. As another court has aptly noted, "the line between legislation and adjudication is not always easy to draw." *LC&S, Inc. v. Warren County Area Plan Comm'n*, 244 F.3d 601, 603 (7th Cir. 2001). In our attempts to draw that line, we will not capitulate to the label that a government body places on its action. *Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988) ("It is not labels that determine whether action is legislative or adjudicative."). Although this circuit has not articulated a test for distinguishing between legislative and adjudicative action, two federal courts of appeals have done so. The Second Circuit focuses on the function performed by the decisionmaker to make the determination. *Thomas v. City of New York*, 143 F.3d 31, 36 n.7 (2d Cir. 1998). By contrast, the Seventh Circuit focuses on the generality and prospectivity of government action to decide whether a government action is legislative in nature. *LC&S*, 244 F.3d at 604 ("Not the motive or stimulus, but the generality and

_____

[10]    The County does not argue that 75 Acres has not been deprived of a constitutionally-protected property interest. Therefore, we assume without deciding that 75 Acres has been deprived of such an interest.

17

consequences, of an enactment determine whether it is really legislation or really something else.").

With these principles in mind,[11] we conclude that the imposition of a moratorium under § 33-319(k) is a legislative act. It is undisputed that § 33-319(k) was enacted by a legislative body through the legislative process. The County concluded, in its legislative judgment, that building permits should not be issued on real property after the propriety of that property's zoning classification has been called into question by criminal allegations of bribery or fraud. Under the Second Circuit's approach, which emphasizes the function performed by the decisionmaker, we would have no difficulty concluding that the decisionmaker in this case is the legislative body of Miami-Dade County and the function it performed was fundamentally legislative. Alternatively, under the Seventh Circuit's approach, we would conclude that § 33-319(k) is both generally applicable (as we explain in greater detail below) and prospective in nature, which compels us to classify the imposition of a moratorium under that ordinance as a legislative act.[12]

---

[11] We decline to adopt a hard-and-fast rule for distinguishing between legislative and adjudicative action. The parties have not urged us to adopt such a rule, nor have they briefed the relative merit of the tests adopted by the Second and Seventh Circuits. Moreover, as we note below, our decision in this case would be the same under either the Second Circuit's test or the Seventh Circuit's test.

[12] Even if the enactment and enforcement of § 33-319(k) were conceptualized as a zoning decision (because the ordinance prohibits the issuance of building permits under certain

18

In reaching this conclusion, we necessarily reject 75 Acres' argument that the ordinance is not a statute of general applicability. 75 Acres' assertion simply is not true. The language of § 33-319(k) does not limit the ordinance's application solely to 75 Acres' property. Rather, any property owner in Miami-Dade County would be subjected to a moratorium under § 33-319(k) if his or her property were implicated in zoning fraud. While it is true that the County's moratorium ordinance has been applied specifically to 75 Acres' property in this case, such an observation does not detract from the fact that the moratorium resulted from the application of a generally applicable ordinance. *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 244-46, 93 S. Ct. 810, 820-21 (1973).

But one aspect of § 33-319(k) gives us pause: the pivotal role the State Attorney plays in triggering the imposition of a moratorium. Many deprivations of property brought about by legislative acts are not conditioned on the occurrence of an event. *See, e.g.*, *Jackson Court Condos. v. City of New Orleans*, 874 F.2d 1070, 1072 (5th Cir. 1989) (city-wide moratorium on time-shares within certain zoning classifications areas). In other cases, the deprivation is triggered by the occurrence

circumstances), our result would not change. *See, e.g.*, *Jackson Court Condos. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989) (noting that zoning-type decisions made by an elected body have often been held to be legislative or, at the very least, "quasi-legislative," thus negating the need for procedural due process).

19

of a legislatively-defined condition unrelated to any government action. *See, e.g.,*
*County Line*, 839 F.2d at 1146 (automatic extinguishment of specific use permit upon
six months of non-use). But in this case, a moratorium is imposed only after the State
Attorney files a criminal information, and there is no doubt in our minds that the State
Attorney is a government official who makes factual determinations and exercises
official discretion when a criminal information is filed. *United States v. Harden*, 37
F.3d 595, 598 (11th Cir. 1994) ("Provided that the prosecutor has probable cause to
believe that an individual committed an offense prohibited by statute, the decision
whether to prosecute and what charge to file . . . are subject to prosecutorial
discretion.") As a consequence, we must consider whether the State Attorney's role
in the imposition of a moratorium entitles 75 Acres to procedural due process
protection.

We conclude that it does not. If procedural due process seeks to ensure
accurate determinations of fact and informed, unbiased exercises of discretion – as
Justice Blackmun suggested and 75 Acres argues – it would follow that the
protections provided by procedural due process would pursue these objectives. But
75 Acres does not seek a hearing at which the State Attorney's factual determination
(regarding the probable culpability of the Zoning Appeals Board member) or the State
Attorney's exercise of discretion would be called into question. In fact, it is quite

difficult to imagine that the State Attorney could be haled into a quasi-judicial proceeding before Miami-Dade County's Zoning Appeals Board to defend his or her decision to file a criminal information. Instead, 75 Acres seeks a hearing to contest "the validity of the moratorium." But if the State Attorney's factual determinations and discretionary act are not the subject of such a hearing (and we cannot imagine that they could be), 75 Acres is then bound by the legislature's judgment that no building permits should be issued on real property implicated in zoning fraud. Because 75 Acres does not seek to, and could not, challenge the State Attorney's decision to file a criminal information, and because the County has exercised its legislative judgment in deciding that building permits should not be issued on property implicated in zoning fraud, we conclude that the State Attorney's act of filing a criminal information is best characterized as a legislatively-defined condition precedent that does not transform the imposition of a moratorium under § 33-319(k) from a legislative act to an adjudicative act.

Because the imposition of a moratorium under § 33-319(k) is a legislative act, the legislative process surrounding the enactment of § 33-319(k) provided 75 Acres with all the process constitutionally due. *Rogin v. Bensalem Township*, 616 F.3d 680, 693-94 (3rd Cir. 1980) ("To provide every person affected by legislation the various rights encompassed by procedural due process . . . would be inconsistent with the

21

structure of our system of government. . . . [T]he general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation, partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will."); *LC&S*, 244 F.3d at 602-03 ("Legislation is prospective in effect and, more important, general in its application. . . . The right to notice and a hearing, the essence of [our modern concept of due process of law], are substitutes for the prospectivity and generality that protect citizens from oppression by legislators and thus from the potential tyranny of electoral majorities."). 75 Acres was not entitled to procedural due process protections when the County Manager, acting without discretion, heeded the legislative command of § 33-319(k) and imposed a moratorium on 75 Acres' property after the criminal information was filed. Having failed to take advantage of the mechanisms of democratic government when § 33-319(k) was enacted, 75 Acres cannot now complain that the alleged deprivation of property occasioned by the automatic moratorium provision of § 33-319(k) was the result of a denial of procedural due process.

## V. CONCLUSION

For the foregoing reasons, we conclude that the imposition of a building moratorium pursuant to § 33-319(k) of the Miami-Dade County Code is a legislative

action that does not implicate the procedural due process protections guaranteed by the Fourteenth Amendment.[13]  As a consequence, 75 Acres can prove no set of facts in support of its procedural due process claim that would entitle it to relief. Accordingly, we need not examine the district court's alternative holding that the reconsideration procedure established in § 33-319(k) is constitutionally adequate, and we AFFIRM the district court's dismissal of 75 Acres' action.

AFFIRMED.

---

[13]     We likewise affirm the district court's dismissal of 75 Acres' procedural due process claim under the Florida Constitution.  The parties appeared to agree, during the summary judgment proceedings, that the due process guarantee of the Florida Constitution mirrors that of the United States Constitution with respect to legislative acts. *See Meola v. Dep't of Corr.*, 732 So. 2d 1029, 1035 (Fla. 1998) (concluding, in a case that presented both federal and Florida procedural due process claims, that "[t]he enactment of a statute affecting liberty or property interests does not implicate procedural due process because *the legislative process itself provides all of the process that is due*") (emphasis in original) (citations omitted).  Thus, our conclusion that the imposition of a moratorium does not entitle 75 Acres to procedural due process under the United States Constitution justifies dismissal of the state constitutional claim as well.