Coos
No. 2005-470

DARREN STARR

v.

GOVERNOR

Argued: July 20, 2006
Opinion Issued: September 26, 2006

*Darren Starr, pro se,* on the brief, and *Wadleigh, Starr & Peters, P.L.L.C.,* of Manchester (*Robert E. Murphy, Jr.,* on the supplemental memorandum of law and orally), for the petitioner.

*Kelly A. Ayotte,* attorney general (*Andrew B. Livernois,* assistant attorney general, on the memorandum of law and orally), for the respondent.

DALIANIS, J. The petitioner, Darren Starr, appeals an order of the Superior Court (*Vaughan,* J.) dismissing his petition for declaratory judgment. We affirm.

The facts of this case are not in dispute. In October 1981, the Governor issued a resolution calling the legislature into special session (1981-1982 special session), to begin on November 17, 1981. The resolution stated that "the welfare of the State" necessitated the special session, and that certain enumerated matters required legislative action. One such matter was the "enactment of corrective legislation" to address the unforeseen impact of "certain laws enacted during the 1981 regular session."

During the 1981-1982 special session, the house of representatives drafted and presented for consideration House Bill 20, which, in its initial form, addressed minimum mandatory sentences for driving while intoxicated. The house subsequently passed an amended version of House Bill 20, which was also passed by the senate, and signed into law by the Governor. The amended portion of House Bill 20 became RSA 651:2, II-e (Supp. 2005), also known as the "truth in sentencing" law.

The petitioner was convicted of second-degree murder on November 17, 1987, and sentenced to a term of twenty-eight years to life imprisonment in accordance with RSA 651:2, II-e. In December 2004, he sought a declaratory judgment that the legislature had illegally adopted RSA 651:2, II-e. The respondent, the Governor, responded with a motion to dismiss, which was granted on March 3, 2005. This appeal followed.

On appeal, the petitioner argues that the legislature, when meeting in special session, is restricted to considering only those matters enumerated in the Governor's resolution calling for such session. He further contends

that the enactment of RSA 651:2, II-e violated the due process protections of the State and Federal Constitutions.

*I. Justiciability*

We must first determine whether the petitioner's claim that the legislature enacted RSA 651:2, II-e outside of the authority granted to it by the Governor is, as the respondent contends, a nonjusticiable political question. This is a question of law, which we review *de novo. Hughes v. Speaker, N.H. House of Representatives*, 152 N.H. 276, 283 (2005).

■ "The political question doctrine is essentially a function of the separation of powers, existing to restrain courts from inappropriate interference in the business of the other branches of Government, and deriving in large part from prudential concerns about the respect we owe the political departments." *Baines v. N.H. Senate President*, 152 N.H. 124, 128 (2005) (quotation omitted). The principle of separation of powers is set forth in Part I, Article 37 of the New Hampshire Constitution. *Id.* The justiciability doctrine prevents judicial violation of the separation of powers by limiting judicial review of certain matters that lie within the province of the other two branches of government. *Id.*

■ A case presents a nonjusticiable political question when there is a textually demonstrable constitutional commitment of the issue to a coordinate political department. *Petition of Judicial Conduct Comm.*, 151 N.H. 123, 128 (2004). Where such a commitment exists, we must decline to adjudicate the matter to avoid encroaching upon the powers and functions of that coordinate political branch. *Id.; see also Baines*, 152 N.H. at 128 ("If a question is not justiciable, it is not ours to review."). Deciding whether a matter has, in any measure, been committed by the constitution to another branch of government is itself a delicate exercise in constitutional interpretation, and is a responsibility of this court as its ultimate interpreter. *Hughes*, 152 N.H. at 283.

■ Part II, Article 3 of the State Constitution instructs the senate and house to "assemble biennially on the first Wednesday of December for organizational purposes in even numbered years, and . . . assemble annually on the first Wednesday following the first Tuesday in January, and at such other times as they may judge necessary . . . ." N.H. CONST. pt. II, art. 3. Part II, Article 50 of the State Constitution grants the Governor the power to call the legislature, when adjourned, into an extra session if and when the welfare of the State so requires. N.H. CONST. pt. II, art. 50; *see also Opinion of the Justices*, 115 N.H. 686, 692 (1975). The State Constitution does not, however, mandate that the Governor set forth with

particularity the business to be taken up by the legislature during such extra sessions; nor does it limit the scope of the legislature's power upon being called together by the Governor. Rather, the State Constitution grants the legislature the "full power and authority" to make, "from time to time," laws and statutes, "for the benefit and welfare of this state," so long as such enactments are constitutional. N.H. CONST. pt. II, art. 5. In the absence of any constitutional language or provision limiting this "full power and authority" to the regular legislative sessions prescribed by Part II, Article 3 of the State Constitution, we interpret the phrase "from time to time" to encompass any time the legislature is called into session. Thus, Part II, Article 5 of the State Constitution plainly constitutes a "textually demonstrable constitutional commitment" of the authority to make laws to the legislative branch.

The petitioner points out that Part II, Article 50 of the State Constitution empowers the Governor to call the legislature into extra sessions "if the welfare of the state should require the same," and contends that this final clause constitutes a limit upon the legislature's power to enact laws when so called. We disagree. The quoted clause constitutes a limitation upon the power of the *executive* branch to call the legislature into extra sessions. In other words, the Governor may call for an extra session only when, in the Governor's judgment, it is required for the welfare of the State. The clause does not in any way limit the legislature's response to the Governor's call for a special session.

The petitioner further contends that because Part II, Article 50 of the State Constitution does not expressly authorize "the enactment of laws that the [G]overnor does not identify as being necessary for the welfare of the state," the legislature was required to abide by the direction of Mason's Manual of Legislative Procedure. Legislative rules in effect during the 1981-1982 special session provided that "[i]n such cases where New Hampshire Committee Rules are silent, 'Mason's Manual of Legislative Procedures' [*sic*] shall be referred to as the primary guide." MANUAL OF THE NEW HAMPSHIRE GENERAL COURT 1981 119; *see also Keefe v. Roberts*, 116 N.H. 195, 197 (1976). Mason's Manual stipulated that, when called into a special session by a governor, a legislature should only enact laws that come within the scope of the governor's resolution. NATIONAL CONFERENCE OF STATE LEGISLATURES, MASON'S MANUAL OF LEGISLATIVE PROCEDURE § 780, at 551-54 (1979).

Mason's Manual is a handbook of general applicability, and there are states in which the scope of the legislature's power upon being called into special session by the governor is specifically limited by their constitutions. *See, e.g.*, COLO. CONST. art. 4, § 9; NEB. CONST. art. IV,

§ 8. In New Hampshire, however, there is no such specific constitutional limitation; thus, the general exhortation in Mason's Manual does not control the outcome here. In any event, while a procedural manual might assist in a legal analysis, it is not binding upon the court in interpreting the State Constitution.

Because we believe that the State Constitution empowers the legislature to enact any laws and statutes for the benefit of the State whenever it sits in session, general or special, we disagree with the petitioner's contention that the State Constitution is silent on the issue before us. However, even if we were to agree with the petitioner, we would nonetheless be compelled to conclude that this issue raises a nonjusticiable political question.

It is well established that the authority to adopt procedural rules for passing legislation is demonstrably committed to the legislative branch by Part II, Articles 22 and 37 of the State Constitution. *Baines*, 152 N.H. at 130; *see also Hughes*, 152 N.H. at 284. Part II, Article 22 of the State Constitution vests in the house of representatives the power to "settle the rules of proceedings in their own house." N.H. CONST. pt. II, art. 22. Part II, Article 37 of the State Constitution grants a corresponding power to the senate. N.H. CONST. pt. II, art. 37.

■ In light of Part II, Articles 22 and 37, we have recognized that the legislature, alone, has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure. *Hughes*, 152 N.H. at 284. "[T]he legislature's adherence to the rules or statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution." *Id.* (quotation omitted). We will not declare a legislative act invalid for failure of a house to observe its own rules. *See Baines*, 152 N.H. at 131. Thus, even if we were to conclude that the legislature's authority to enact laws in a special session is not specifically covered by the constitution or legislative rules, we would nonetheless be compelled to decline judicial review of the issue.

■ Part II, Article 5 of the State Constitution constitutes a "textually demonstrable constitutional commitment" of the authority to make laws to the legislative branch. Thus, we conclude that the petitioner's challenge to RSA 651:2, II-e on procedural grounds presents a nonjusticiable political question.

*II. Due Process*

The petitioner argues that the legislature enacted RSA 651:2, II-e contrary to the due process protections of Part I, Article 15 of the State Constitution and the Fourteenth Amendment to the Federal Constitution.

Specifically, he contends, "The due process requirement of notice mandates that the citizens of . . . New Hampshire be advised of what laws would be changed or enacted in special session." We first address this issue under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

It is well established that an elementary and fundamental requirement of due process, as guaranteed by Part I, Article 15 of the State Constitution, is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to present their objections. *City of Claremont v. Truell*, 126 N.H. 30, 35 (1985). We have never taken up the question of whether the legislature, when in regular or special session, is required to provide any such notice to the citizenry prior to the enactment of a law. At least one federal circuit court has suggested that the prospective character and general applicability of legislation renders the notion of "[l]egislative due process" virtually meaningless. *L C & S, Inc. v. Warren County Area Plan Com'n*, 244 F.3d 601, 602 (7th Cir. 2001). However, even if we assume, without deciding, that constitutional due process protections attend the passage of legislation, we conclude that the legislature provided such protections in this case.

"All public proceedings shall be open to the public, and all persons shall be permitted to attend any meetings of those bodies or agencies." RSA 91-A:2, II (Supp. 1981) (amended 1983, 1986, 1991). Any meeting of the legislature for the purposes of doing business affecting any or all citizens of this State is defined as a "public proceeding" for the purposes of RSA 91-A:2, II. RSA 91A:1-a, I(a) (Supp. 2005). Thus, all sessions of the legislature, including those extra sessions called by the Governor for the welfare of the State, are required by statute to be open to the public. Legislative rules in effect during the 1981-1982 special session further required that all committee meetings be open to the public. *See* MANUAL OF THE NEW HAMPSHIRE GENERAL COURT 1981 119 ("All meetings of any committee of the House and Senate shall be open to the public subject to the provisions of N.H. RSA 91-A.").

The petitioner does not contend that the legislature failed to abide by these requirements prior to enacting RSA 651:2, II-e. Indeed, at a January 5, 1982 hearing on House Bill 20, various members of the public spoke in favor of or in opposition to the amendment that would become RSA 651:2, II-e. On January 25, 1982, the house held a public hearing on House Bill 20, and numerous interested members of the public again took the opportunity to speak for or against the amendment. Because it is evident that the citizens of New Hampshire had notice of and an opportunity to be

heard on the amendment to House Bill 20, we conclude that the enactment of RSA 651:2, II-e during the 1981-1982 special session did not violate the due process protections of Part I, Article 15 of the State Constitution.

The Federal Constitution offers the petitioner no greater protection than does the State Constitution under these circumstances. *See L C & S*, 244 F.3d at 605 (concluding that "bona fide" legislation requires no notice or opportunity to be heard). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.