# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2021AP1764 |

| | |
|---|---|
| COMPLETE TITLE: | Thomas G. Miller,<br>    Plaintiff-Respondent-Petitioner,<br>  v.<br>Zoning Board of Appeals of the Village of Lyndon Station and Village Board of Lyndon Station,<br>    Defendants,<br>Larry Whaley and Kristi Whaley,<br>    Intervenors-Appellants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 539, 980 N.W.2d 295
PDC No: 2022 WI App 51 - Published

| | |
|---|---|
| OPINION FILED: | June 6, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 13, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Juneau |
| JUDGE: | William Andrew Sharp |

| | |
|---|---|
| JUSTICES: | |

DALLET, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Kathleen Henry* and *Dairyland Public Interest Law,* Madison. There was an oral argument by *Kathleen Henry.*

For the intervenors-appellants, there was a brief filed by *Mitchell R. Olson, Zachariah J. Sibley, Michael P. Van Kleunen,* and *Axley Brynelson, LLP,* Madison. There was an oral argument by *Zachariah J. Sibley.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP1764
(L.C. No. 2020CV178)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Thomas G. Miller,**

      **Plaintiff-Respondent-Petitioner,**

  **v.**

**Zoning Board of Appeals of the Village of Lyndon Station and Village Board of Lyndon Station,**

      **Defendants,**

**Larry Whaley and Kristi Whaley,**

      **Intervenors-Appellants.**

**FILED**

**JUN 6, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion for a unanimous Court.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. Trustee Jan Miller serves on the Village Board of Lyndon Station. She cast the deciding vote in favor of her daughter and son-in-law's application to amend the Village's zoning ordinance to rezone their vacant residential property for commercial development. A local business owner, Thomas Miller (no relation), argues that the

vote violated his right to due process because Trustee Miller was partial to her daughter and son-in-law's rezoning application. We reject this argument because there is no due process right to impartial decision-makers when a legislative body like the Village Board enacts, repeals, or amends a generally applicable law like the zoning ordinance. Accordingly, we affirm the court of appeals' decision.

I

¶2 Kristi and Larry Whaley own a 1.87 acre property in Lyndon Station. Although most nearby properties are zoned as commercial, their property was zoned as residential.

¶3 The Whaleys contracted to sell their property on the condition that it be rezoned for commercial development. They then applied for rezoning pursuant to the Village's regular process, which proceeds as follows: The application is first sent to the Village's five-member Plan Commission[1] for a public meeting and vote on whether to recommend the zoning change. If the Plan Commission recommends the change, the three-member Village Board then holds a public hearing at which it must consider statements by the applicant and anyone else who wants to speak. Finally, the Village Board votes on whether to amend the zoning ordinance.

_____

[1] Although the Village Code provides for a seven-member Plan Commission, just five members were serving at the time the Whaleys submitted their application. See Village Code § 101.4.

¶4 Trustee Miller serves on both the Plan Commission and the Village Board. She is also Kristi Whaley's mother and lived with the Whaleys during the relevant period.[2] Shortly after the Whaleys filed their rezoning application, some residents expressed concerns that Trustee Miller had a conflict of interest.[3]

¶5 The Plan Commission (with Trustee Miller participating) voted to recommend that the Village Board approve the Whaleys' application and amend the zoning ordinance. Subsequently, the Village Board held a public hearing where Thomas Miller and others spoke against the proposed rezoning. Miller owns Miller's General Store and opposed the rezoning for several reasons, including because the prospective buyer planned to redevelop the property into a chain store that would compete with his business. Miller and other residents also questioned whether Trustee Miller had a conflict of interest that should preclude her from participating in the vote.

---

[2] The Whaleys move to strike the facts regarding Trustee Miller's relationship to the Whaleys because they were not a part of the certiorari record compiled by the Village. Because we rule for the Whaleys on the merits, we deny this motion as moot.

[3] The Village's attorney determined that there was no statutory conflict of interest under Wis. Stat. § 19.59 (2021-22) since Trustee Miller would not receive "any monetary values [sic] from the [rez]oning of the property in question." Although Miller argued in the circuit court that Trustee Miller's participation in the Village Board's vote nevertheless violated this statute, he now concedes that it did not. Accordingly, we do not address § 19.59 further.

3

¶6  Trustee Miller's participation was decisive in the Village Board's 2-1 vote to grant the Whaleys' application and amend the zoning ordinance.  Miller appealed to the Village's Zoning Board of Appeals (ZBA) arguing that "[t]here was a clear conflict of interest involving the vote from Trustee Jan Miller."  The ZBA subsequently upheld the Village Board's vote to amend the zoning ordinance.

¶7  Miller sought certiorari review of the ZBA's decision pursuant to Wis. Stat. § 62.23(7)(e)10. (2021-22),[4] again alleging that Trustee Miller should not have participated in the Village Board vote.  The Whaleys intervened to defend the ZBA's decision.  The circuit court[5] reversed the ZBA's decision, concluding that Trustee Miller's participation in the Village Board vote violated due process because she was not a fair and impartial decision-maker.

¶8  The Whaleys[6] appealed and the court of appeals reversed.  See Miller v. Zoning Bd. of Appeals, 2022 WI App 51, ¶2, 404 Wis. 2d 539, 980 N.W.2d 295.  The court of appeals assumed that Trustee Miller "was partial to her daughter and son-in-law's rezoning request," but nonetheless concluded that her participation in the vote did not violate due process.  See

---

[4] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

[5] The Honorable William Andrew Sharp of the Juneau County Circuit Court presided.

[6] Neither the Village nor the ZBA appealed the circuit court's decision.

id. ¶¶26, 33. To explain why, the court of appeals distinguished between adjudicative acts, which involve "application of [a] zoning ordinance to a particular set of facts and circumstances," and legislative acts like amending a zoning ordinance. Id., ¶¶40-41. For adjudicative acts, the court of appeals explained that due process requires an impartial decision-maker. Id., ¶40. But according to the court of appeals, the same is not true of legislative determinations like those at issue here——deciding whether to enact, repeal, or amend a generally applicable law like a zoning ordinance. See id., ¶¶39-42. In that context, the court of appeals held that an impartial decision-maker is not required. See id.

II

¶9 We review the ZBA's decision pursuant to Wis. Stat. § 62.23(7)(e)10., which permits statutory certiorari review of such decisions. Statutory certiorari review encompasses, among other considerations,[7] whether the ZBA "proceeded on a correct theory of law." Moreschi v. Village of Williams Bay, 2020 WI 95, ¶15, 395 Wis. 2d 55, 953 N.W.2d 318 (quoting another source). Proceeding on a correct theory of law includes complying with the requirements of due process. See Marris v.

---

[7] The other considerations are: (1) whether the ZBA acted within its jurisdiction; (2) whether its actions were "arbitrary, oppressive, or unreasonable and represented its will and not its judgment"; and (3) "whether the board might reasonably make the order or determination in question based on the evidence." See State ex rel. Ziervogel v. Wash. Cnty. Bd. of Adjustment, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401.

5

_City of Cedarburg_, 176 Wis. 2d 14, 24, 498 N.W.2d 842 (1993). Whether the ZBA proceeded on a correct theory of law is a question of law we review de novo while according a "presumption of correctness and validity" to the ZBA's decision. _State ex rel. Ziervogel v. Wash. Cnty. Bd. of Adjustment_, 2004 WI 23, ¶¶13-14, 269 Wis. 2d 549, 676 N.W.2d 401.

III

¶10 Miller's central claim is that Trustee Miller's participation in the Village Board's vote to amend the zoning ordinance violated his right to due process.[8]

¶11 This claim is grounded in the guarantees of procedural due process contained in the Fourteenth Amendment to the United States Constitution and Article I, § 1 of the Wisconsin Constitution.[9] Procedural due process bars "a deprivation by state action of a constitutionally protected interest in life,

---

[8] At times Miller's brief suggests that Trustee Miller's participation in the Plan Commission's decision to recommend that the Village Board amend the zoning ordinance also violated due process. The relief he seeks, however, is "revers[al of] the decision of the ZBA and [Village] Board," not the Plan Commission. Moreover, Miller does not develop a separate argument for why the requirements of procedural due process would differ before the Plan Commission and the Village Board. Accordingly, we focus solely on whether Trustee Miller's participation in the Village Board's vote to amend the zoning ordinance violated due process.

[9] Although the text of Article I, § 1 of the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution differ, Miller does not argue that they provide different procedural due process protections. Accordingly, we treat these two provisions as coextensive for purposes of this discussion.

liberty, or property without due process of law." Thorp v. Town of Lebanon, 2000 WI 60, ¶53, 235 Wis. 2d 610, 612 N.W.2d 59 (quoting Penterman v. Wis. Elec. Power Co., 211 Wis. 2d 458, 473, 565 N.W.2d 521 (1997)). As this language implies, in order to establish a violation of procedural due process, a plaintiff must demonstrate both: (1) the deprivation of a protected liberty interest——"life, liberty, or property"——by state action and (2) that the process he received before that deprivation fell short of the minimum the Constitution requires. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 459-60 (1989). We focus on the second of these two requirements because it is dispositive of Miller's claim.

¶12 The minimum procedural protections required by the Due Process Clause vary depending on the context. See Mathews v. Eldridge, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands." (quoting another source)). "[I]n deciding what the Due Process Clause requires when the State deprives persons of life, liberty or property, the Supreme Court has long distinguished between legislative and adjudicative action." Jones v. Governor of Fla., 975 F.3d 1016, 1048 (11th Cir. 2020) (citing Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445-46 (1915)).

¶13 For adjudicative actions like deciding civil or criminal cases, "a fair trial in a fair tribunal is a basic requirement of due process." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009) (quoting In re Murchison, 349 U.S. 133,

136 (1955)). Thus, even though we presume that judges act "fairly, impartially, and without bias," proof of a "serious risk of actual bias can objectively rise to the level of a due process violation." Miller v. Carroll, 2020 WI 56, ¶¶21-22, 392 Wis. 2d 49, 944 N.W.2d 542 (citing Caperton, 556 U.S. at 868). This standard applies not only to formal judicial proceedings but also to "administrative agencies which adjudicate." Withrow v. Larkin, 421 U.S. 35, 46 (1975). Accordingly, when adjudicative acts are involved, procedural due process requires impartial decision-makers. See, e.g., 75 Acres, LLC v. Miami-Dade County, 338 F.3d 1288, 1294 (11th Cir. 2003).

¶14 When legislative actions are at issue, however, those affected by legislation "are not entitled to any process beyond that provided by the legislative process." Jones, 975 F.3d at 1048 (emphasis in original). That is because "[t]he act of legislating necessarily entails political trading, compromise, and ad hoc decisionmaking." Rogin v. Bensalem Township, 616 F.2d 680, 693 (3d Cir. 1980). In other words, legislators are partial to legislation all the time; indeed, they often run for office promising to use legislative power to accomplish specific policy objectives. And the primary check on legislators acting contrary to the public interest when legislating is the political process. See id. at 694; see also Bi-Metallic, 239 U.S. at 445 (explaining that the rights of those affected by legislation "are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule"). Accordingly, because "a legislative

8

determination provides all the process that is due," partiality on the part of legislators does not violate the Due Process Clause. Protect Our Parks, Inc. v. Chicago Park Dist., 971 F.3d 722, 738 (7th Cir. 2020) (quoting another source); see also, e.g., Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, 993 F.3d 802, 818 (10th Cir. 2021); Samson v. City of Bainbridge Island, 683 F.3d 1051, 1060-61 (9th Cir. 2012); Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 174 (2d Cir. 2005).

¶15 Our cases similarly distinguish between legislative and adjudicative acts when determining what procedural due process protections are required. For example, in Quinn v. Town of Dodgeville, 122 Wis. 2d 570, 364 N.W.2d 149 (1985), we held that a town board resolution blocking a county board proposal to amend a zoning ordinance was a legislative act.[10] See id. at 584-85; see also Buhler v. Racine County, 33 Wis. 2d 137, 146, 146 N.W.2d 403 (1966) ("[Z]oning is a legislative function."). That was because "[a]n ordinance amendment," even one that affects only a small amount of land or a handful of people, "changes the ordinance but does not execute or implement its

---

[10] Wisconsin Stat. § 59.97(5)(e)6. (1983-84), now renumbered as Wis. Stat. § 59.59(5)(e)6., gives town boards the power to block certain county board amendments to zoning ordinances.

9

provisions."[11] Quinn, 122 Wis. 2d at 584-85. We therefore held that due process did not require additional notice to a landowner or an opportunity to be heard beyond that already guaranteed by statute before the town board blocked the zoning amendment. See id.

¶16 Miller argues that the distinction between legislative and adjudicative acts is not relevant to deciding whether due process requires impartial decision-makers. Instead, he says that our decision in Marris v. City of Cedarburg, 176 Wis. 2d 14, 498 N.W.2d 842 (1993) held that there is a due process right to impartial decision-makers in rezoning matters, regardless of whether the rezoning decision at issue is legislative or adjudicative.

¶17 In Marris, a landowner applied to her local zoning board of appeals for recognition of a legal non-conforming use of her property. Id. at 19. She argued that she was denied "a fair and impartial hearing under . . . common law concepts of due process and fair play" when the zoning board's chairperson indicated that he had prejudged her application. Id. at 24; see also id. at 24-29. We agreed that the landowner was denied a

---

[11] "Spot zoning," "the practice whereby a single lot or area is granted privileges which are not granted or extended to other land in the vicinity . . . is not illegal per se in Wisconsin." Cushman v. City of Racine, 39 Wis. 2d 303, 306-07, 159 N.W.2d 67 (1968). It may, however, violate the Fourteenth Amendment's Equal Protection Clause under certain circumstances. See Buhler, 33 Wis. 2d at 145-46. Nevertheless, Miller does not allege that the Board's vote to amend the Village's zoning ordinance constitutes spot zoning or violates the Equal Protection Clause.

fair hearing, and observed that "[a]lthough the parties characterize the Board's hearing as adjudicative, we need not label these proceedings quasi-legislative or [adjudicative] to determine whether the decision-maker must be impartial." Id. at 24 n.6. Rather, we explained that "[w]e need look only to the characteristics of the proceeding to determine whether the decision-maker must be impartial." Id. Because the application required the zoning board to make "factual determinations about an individual property owner and then apply those facts to the ordinance," we held that an impartial decision-maker was required. Id.

¶18 Marris does not, as Miller asserts, hold that the legislative/adjudicative distinction is irrelevant to deciding whether due process requires an impartial decision-maker in a particular context. On the contrary, Marris emphasized the importance of the "characteristics of the proceeding" to determining what process is due. See id. When Marris examined those characteristics, it held that an impartial decision-maker was required because "[t]he zoning decision in this case require[d] that the [b]oard examine a specific piece of land and the activities of a particular property owner," "engage in fact-finding and then make a decision based on the application of those facts to the [existing zoning] ordinance." Id. at 26. Thus, even though we did not label it as such, the board's decision in Marris was adjudicative—it focused on how to apply the existing zoning law to particular facts and circumstances, not on whether to enact, alter, or repeal the existing zoning

11

law. See id.; see also Step Now Citizens Grp. v. Town of Utica Plan. & Zoning Comm'n, 2003 WI App 109, ¶48, 264 Wis. 2d 662, 663 N.W.2d 833 (explaining that Marris involved an adjudicative, not legislative, decision). The approach in Marris is therefore consistent with the one taken by Quinn, which examined the circumstances of the specific government action at issue to determine whether it was legislative or adjudicative. See Quinn, 120 Wis. 2d at 585 ("An ordinance amendment is legislation since it changes the ordinance but does not execute or implement its provisions.").

¶19 Applying that approach to this case, we hold that the Village Board's vote to amend the zoning ordinance and rezone the Whaleys' property was a legislative act. The Village Board rezoned the Whaleys' property by amending the Village's generally applicable zoning ordinance. In other words, the Village Board changed the law. It did not apply existing law to individual facts or circumstances, as it would if it were making an adjudicative decision like whether to grant a variance or permit a legal non-conforming use. See, e.g., State v. Outagamie Cnty. Bd. of Adjustment, 2001 WI 78, ¶41, 244 Wis. 2d 613, 628 N.W.2d 376 (stating that a decision about whether to grant a variance excusing compliance with an ordinance was adjudicative); Step Now, 264 Wis. 2d 662, ¶48 (describing determinations about whether to permit non-conforming uses of property as adjudicative). Moreover, unlike an adjudicative decision, the Village Board's amendment to the zoning ordinance applies "prospectively, [and does] not impos[e]

12

a sanction for past conduct." L C & S, Inc. v. Warren Cnty. Area Plan Comm'n, 244 F.3d 601, 604 (7th Cir. 2001).

¶20 It is true, of course, that this particular amendment came about only after the Whaleys applied for the zoning change and affected only the Whaleys' property directly. But that does not alter our analysis. As we explained in Quinn, rezoning by amending a local government's zoning ordinance "does not lose its legislative character simply because the number of people affected or the size of the land is small."[12] 122 Wis. 2d at 584. What matters is that the Village Board made a prospective change by enacting, repealing, or amending existing generally applicable law. The Village Board's action was thus legislative in nature, and for that reason, Miller was not entitled to an impartial decision-maker. Accordingly, we affirm the court of appeals' decision.[13]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[12] In passing, Miller's reply brief suggests that we should overrule Quinn. We decline to address this argument because it is undeveloped. See Sw. Airlines Co. v. DOR, 2021 WI 54, ¶32 n.10, 397 Wis. 2d 431, 960 N.W.2d 384 (explaining that "we generally do not address undeveloped arguments").

[13] Because we reject Miller's claim on the merits we need not address the Whaleys' argument that we should vacate the lower courts' and ZBA's decisions because the ZBA lacked jurisdiction to review the Village Board's vote to amend the zoning ordinance under Wis. Stat. § 62.23(7)(e)7.b.