# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 25, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2022AP616-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF416

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD L. BORK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM. Richard L. Bork appeals from a judgment of conviction and from an order denying his postconviction motion. Bork asserts that he is entitled to resentencing because the circuit court's sentencing remarks demonstrated judicial bias. We affirm.

¶2　The State charged Bork with one count of operating while under the influence (OWI), seventh, eighth, or ninth offense, in violation of WIS. STAT. § 346.63(1)(a) (2021-22)[1] and one count of operating with prohibited alcohol concentration, seventh, eighth, or ninth offense, in violation of § 346.63(1)(b). Bork pled no contest to the OWI charge, and the circuit court dismissed the operating with a prohibited alcohol concentration charge. The State agreed to recommend a sentence of six years of initial confinement and four years of extended supervision.

¶3　After accepting Bork's plea, the circuit court ordered a presentence investigation report (PSI), which recommended five to six years of initial confinement and two to three years of extended supervision consecutive to a sentence he was then serving. In recounting Bork's criminal history, the PSI noted that he had been sentenced to five years of initial confinement and three years of extended supervision for his seventh OWI conviction in 2011.

¶4　At sentencing, the State recommended six years of initial confinement and four years of extended supervision, to be served consecutively to any other sentence; Bork asked for four years of initial confinement and four years of extended supervision. After Bork's counsel made her recommendation, the

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

court asked her why it would "make any sense to give him a lesser sentence this time than he received for [his] seventh offense … when he completed ERP, got out, was on extended supervision, drove drunk again, and now he's back here." In response, Bork's counsel replied that it was her understanding that part of Bork's sentence for his seventh OWI conviction "was aimed at" a recklessly endangering safety count that was charged with the seventh OWI. The court noted that, according to the PSI, Bork "felt he was treated unfairly when he got the five years" on his seventh OWI conviction and "felt he was treated unfairly … with that sentence and now you're asking that I go lesser" and remarked that "[i]t's probably not going to happen, but continue on."

¶5    After Bork's counsel finished her remarks, the court questioned Bork during his allocution, asking what needed to happen for him to "make the right choice" and why the court should "put the public at risk" given Bork's history of impaired driving. When Bork finished speaking, the court began its analysis under the *Gallion* factors—the gravity of the offense, the rehabilitative needs of the defendant, and the need to protect the public. *See State v. Gallion*, 2004 WI 42, ¶23, 270 Wis. 2d 535, 678 N.W.2d 197. First, it described Bork's eighth OWI as "a high-severity offense" with several "aggravating factors": (1) Bork's blood alcohol concentration was eleven times above the legal limit; (2) he drove partway into an oncoming lane of traffic; (3) he lied to the arresting officer about having been drinking; and (4) he "yelled insults at the officer." Turning to Bork's character and rehabilitative needs, the court noted several positive aspects of his character, including his "good childhood," "good work history," and acquisition of a high school equivalency degree while incarcerated. It also highlighted several negative factors, including that he continues to drive drunk "[d]espite probation, jail, prison and intensive treatment," has a lengthy

criminal history, "minimizes the severity of his conduct," believes his sentence for his seventh OWI conviction was unfair, and is apparently not interested in maintaining sobriety.

¶6    These considerations led the court to conclude that Bork "is an accident or a fatality waiting to happen" and that "the need to protect the public is extremely high." They also led the court to reject Bork's proposed sentence:

> He's not getting concurrent time. There's no way that's going to happen here. That would unduly depreciate the severity of the offense. It makes no sense to me to give him a lesser sentence this time than he received for the seventh offense. Although, I understand that there were factual differences there that made that offense factually more severe.
>
> … And as I indicated, he was out on—after successfully completing ERP, he was out on extended supervision and then he commits this offense. So it makes factually no sense to me to give him a lesser sentence now after he's done the same thing again for his eighth offense.

The court sentenced Bork to seven years of initial confinement followed by four years of extended supervision consecutive to any other sentence, noting that this sentence was "a step up from the prior sentence."

¶7    Bork moved for resentencing, arguing that the circuit court exhibited objective bias because it decided Bork's sentence before he and his counsel finished speaking and because it applied a preconceived sentencing policy of imposing a longer sentence than he received for his seventh OWI. The court disagreed, concluding that the sentencing hearing transcript reflected "the [c]ourt's specific analysis" underlying Bork's sentence. The court acknowledged that it interjected and "ask[ed] questions of defense counsel when they came to [mind because] … that's a practice that I have." The court acknowledged that its

questions to Bork's counsel "did indicate skepticism" about her recommendation but "strongly disagree[d]" that they were "disparaging." The court also denied having a "hard and fast policy" of imposing longer sentences for repeat offenders but acknowledged a general belief "that if somebody keeps doing something there should be a greater punishment to try to keep that from happening again." Finally, the court recapitulated its sentencing analysis, emphasizing how it had applied the *Gallion* factors to the facts in Bork's case. Based on that fact-specific analysis, the court concluded that it neither prejudged Bork's sentence nor applied a preconceived sentencing policy. Bork appeals.

¶8 We begin by noting that sentencing is left to the discretion of the circuit court, and thus our review is limited to whether the court erroneously exercised that discretion. *Gallion*, 270 Wis. 2d 535, ¶17. We presume that a judge acts fairly, impartially, and without bias when sentencing a defendant. *State v. Herrmann*, 2015 WI 84, ¶24, 364 Wis. 2d 336, 867 N.W.2d 772. To overcome that presumption, the party asserting judicial bias must show bias by a preponderance of the evidence. *Id.*

¶9 "In evaluating whether a party has rebutted the presumption, Wisconsin courts have taken both a subjective and objective approach." *Miller v. Carroll*, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542. Here, Bork raises an objective bias claim, which focuses on whether there is "a serious risk of actual bias—based on objective and reasonable perceptions." *Id.*, ¶24 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). "[P]roof of a 'serious risk of actual bias can objectively rise to the level of a due process violation.'" *Miller v. Zoning Bd. of Appeals*, 2023 WI 46, ¶13, 407 Wis. 2d 678, 991 N.W.2d 380 (quoting *Carroll*, 392 Wis. 2d 49, ¶¶21-22). To determine whether the circuit court exhibited a serious risk of actual bias, we must examine "whether the

circumstances 'would offer a possible temptation to the average … judge to … lead him not to hold the balance nice, clear and true.'" *Carroll*, 392 Wis. 2d 49, ¶24 (quoting *Caperton*, 556 U.S. at 885; omissions in original). "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Carroll*, 392 Wis. 2d 49, ¶24 (quoting *Caperton*, 556 U.S. at 886-87). Whether the court was objectively biased is a question of law that this court reviews de novo. *Herrmann*, 364 Wis. 2d 336, ¶23.

¶10 On appeal, Bork first argues the circuit court exhibited an appearance of bias when it said that Bork's recommended sentence was "probably not going to happen" before hearing the parties' full arguments or Bork's allocution. Bork rests his bias argument principally on this court's unpublished opinion in *State v. Lamb*, No. 2017AP1430-CR, unpublished slip op. (WI App Sept. 25, 2018), but that case is materially distinguishable. In *Lamb*, the circuit court had a dialogue with the defendant at the start of the sentencing hearing in which the defendant mentioned probation and "*the possibility of leaving today*," to which the court responded by saying, "*Not really*. Okay. Just thought I'd tell you that so you don't have any false hopes. I mean, there's a possibility, but it's probably not going to happen." *Id.*, ¶5. On review, this court determined that the circuit court's comments "reasonably conveyed to Lamb that, before the court had heard any sentencing arguments, it had effectively decided against ordering probation." *Id.*, ¶17.

¶11 Here, in contrast, the remark on which Bork relies came after the State's argument and after Bork's counsel made her sentence recommendation. The comment was made as part of a colloquy with Bork's counsel in which the circuit court pressed her to explain why it should impose a shorter sentence than Bork had received for his previous OWI conviction. In addition, unlike in *Lamb*,

6

the court reviewed the PSI before the sentencing hearing, which contained "essential sentencing information about the offense and [Bork]'s character, as well as an additional sentencing recommendation." *See id.*, ¶15. The PSI served as an additional source of information that would otherwise have only been available to the court through the parties' sentencing remarks. Finally, before it pronounced sentence, the court set forth reasons underlying the sentence that were tethered to the *Gallion* factors as required under Wisconsin law. These considerations lead us to conclude that a reasonable observer would not interpret the court's "probably not going to happen" remark as evidence of prejudgment.

¶12 Bork relies on three other cases, but each involved remarks indicative of bias in both their timing and substance. In *State v. Gudgeon*, the circuit court wrote a note to the defendant's probation agent and former counsel before an extension hearing stating "I want his probation extended," which the court later did at the hearing. 2006 WI App 143, ¶¶3-4, 295 Wis. 2d 189, 720 N.W.2d 114. Similarly, in *State v. Goodson*, the circuit court told the defendant at a sentencing hearing that he would "get the maximum" if his extended supervision was revoked and then later referenced that remark during a revocation hearing at which it sentenced the defendant to the maximum amount of confinement available. 2009 WI App 107, ¶¶2, 5, 320 Wis. 2d 166, 771 N.W.2d 385. Finally, in *State v. Marcotte*, the circuit court told the defendant during a drug court hearing that he would be sentenced to prison if he did not succeed in drug court and then later "followed through on that promise at Marcotte's sentencing after revocation hearing, imposing a sentence longer than those requested by both the State and the DOC." 2020 WI App 28, ¶19, 392 Wis. 2d 183, 943 N.W.2d 911. In each of these cases, the courts made statements before sentencing hearings in which they communicated unequivocally what the defendant's sentence would be

if certain events happened. Here, in contrast, the circuit court's statement that a lesser sentence was "probably not going to happen" was made after the State and Bork's counsel had made their sentencing recommendations and was part of the court's attempt to understand the rationale underlying Bork's counsel's recommendation.

¶13 Bork's second argument is that the circuit court applied a preconceived sentencing policy that an OWI sentence should not be shorter than that imposed for a prior OWI conviction, rather than imposing a sentence on the specific facts of this case. A sentencing court may reasonably "impose escalating … penalties by way of increased sentences" where an offender commits successive or repeat offenses. *State v. Ziegler*, 2006 WI App 49, ¶35, 289 Wis. 2d 594, 712 N.W.2d 76. Such was the case here: Bork completed intensive treatment while incarcerated in connection with his seventh OWI yet committed the same offense after being released. As in *Ziegler*, the logic behind the court's decision to impose a longer sentence than Bork received for the prior conviction "is unassailable under the facts of this case." *See id.*

¶14 Bork also relies on *State v. Ogden*, 199 Wis. 2d 566, 544 N.W.2d 574 (1996), but that case is also materially distinguishable. In *Ogden*, the sentencing court denied the defendant "Huber privileges for child care" pursuant to a "mechanistic sentencing approach" under which it never granted such privileges for that purpose because of past experiences in which defendants "use[d] it only as a means of getting out of jail." *Id.* at 572. Here, although the circuit court was skeptical that a shorter sentence was appropriate, it grounded the sentence it imposed on the specific facts of Bork's eighth OWI offense, his character and rehabilitative needs, and the court's perception of what sentence was necessary to protect the public. The supreme court made clear in *Ogden* that a

sentencing court can entertain "general predispositions" so long as it grounds a sentence in the particular facts of the case. *Id.* at 573. The circuit court did so here.

¶15 Because Bork has not rebutted the presumption that the circuit court acted fairly, impartially, and without bias in sentencing him, we affirm Bork's conviction and the court's denial of his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.