COURT OF APPEALS
DECISION
DATED AND FILED

December 12, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1991**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV129

IN COURT OF APPEALS
DISTRICT III

---

SOJENHOMER LLC AND 7783 STH 42 LLC,

   PLAINTIFFS-RESPONDENTS,

 V.

VILLAGE OF EGG HARBOR AND VILLAGE OF EGG HARBOR PLAN
COMMISSION,

   DEFENDANTS-APPELLANTS.

---

APPEAL from a judgment of the circuit court for Door County: D. T. EHLERS, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1     STARK, P.J.   In this zoning case, Sojenhomer LLC and 7783 STH 42 LLC (hereinafter, Sojenhomer) challenge the Village of Egg Harbor Plan

Commission's[1] denial of a conditional use permit (CUP). The Plan Commission denied the CUP on the basis that the CUP application's proposal would exacerbate existing traffic safety and congestion problems and therefore did not promote the public safety and welfare of the Village's residents.

¶2 On certiorari review, the circuit court concluded that the Plan Commission did not proceed according to law when it denied Sojenhomer's CUP application. Specifically, the court found that Sojenhomer's right to a fair and impartial review of its CUP application had been violated by the involvement of two members of the Plan Commission who had demonstrated prior bias. It further determined that the due process violation could not be cured on remand. The court therefore reversed the Village's decision and directed that the CUP be granted unconditionally. The Village appeals from the court's reversal.

¶3 On appeal, the Village does not contest that the bias of two of the Plan Commission members affected its decision or that Sojenhomer's procedural due process rights were violated. Instead, the Village argues that the circuit court erroneously exercised its discretion by ordering that the CUP be granted unconditionally as a remedy, rather than choosing from a variety of alternative remand options. Because we conclude that the court reasonably exercised its discretion under the facts in this case by remedying the violation of Sojenhomer's due process rights through the unconditional grant of the CUP, we affirm.

---

[1] The Village of Egg Harbor delegated the authority to review conditional use permits to the Village of Egg Harbor Plan Commission (Plan Commission). We refer to both parties as the Village, unless otherwise noted.

**BACKGROUND**

¶4    Sojenhomer's property is currently home to Shipwrecked Brew Pub, a restaurant and brew pub, located at the intersection of State Trunk Highway 42 and County Trunk Highway G in Egg Harbor, Wisconsin. In its CUP application, Sojenhomer proposed to expand Shipwrecked by constructing an addition for an outdoor beer garden on a previously purchased, adjacent lot. Under the Village's ordinances, the proposal required a zoning CUP.[2] *See* DOOR COUNTY, WIS., VILLAGE OF EGG HARBOR CODE OF ORDINANCES § 152.025(B)(4) (Apr. 13, 2013).

¶5    In January 2021, Sojenhomer applied for an initial CUP for the project. The Village denied Sojenhomer's initial CUP after a public hearing. The Village's written decision cited issues with a proposal for Shipwreck's shared use of a driveway to allow for "egress from [the] additional parking spots and [the] beer garden," which would require the project to be "reconfigured" and would impact "access, setbacks, parking configuration and impervious surface concerns." This CUP application is not at issue in this case.

¶6    According to the Village, Shipwrecked's "expansion was overwhelmingly opposed by Village residents," and the Village received numerous letters as well as signature petitions objecting to the CUP. The Village states that "[t]he common complaint was that no new parking was being provided

---

[2] "Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner." *Town of Rhine v. Bizzell*, 2008 WI 76, ¶20, 311 Wis. 2d 1, 751 N.W.2d 780.

for an establishment that was already woefully short of spaces in a highly congested and parking[-]challenged area."

¶7      Sojenhomer claims that as a result of the initial CUP application, a GoFundMe page—titled, "Smart Growth Egg Harbor"—was created as a "fund to contribute to attorney fees for Egg Harbor residents and business owners looking to keep our village ordinances upheld."  The GoFundMe page contained a photo of the Village's sign changing the name "Egg Harbor" to "KEG Harbor."  There is no dispute that Plan Commission members Jon Kolb and Chris Roedl[3] individually donated to the GoFundMe page.

¶8      On March 23, 2021, Sojenhomer filed a second CUP application—a revised version of its initial application—which is the subject of this case. Sojenhomer sought permission to construct an addition to the current Shipwrecked building, composed of both kitchen preparation space and storage as well as an "outdoor facing bar that will operate seasonally."  The project would add ninety-two additional seats in a landscaped area, but "due to geographic constraints," Sojenhomer averred that there was not enough space on the proposed project site for a large, paved parking lot.

¶9      For "Restaurant-Type Activities," the Village's ordinances required "[o]ne (1) space per four (4) seats + one (1) space per four (4) employees," which includes seating "both inside and outside."  CODE OF ORDINANCES

---

[3] Roedl was not a member of the Plan Commission during Sojenhomer's initial CUP application review.

§ 152.030(D)(1) (Sept. 13, 2021).[4] The application proposed expanding the Shipwrecked premises to increase the seating capacity to 394 patrons and accommodate up to 24 staff members; thus, the Village's ordinances required Shipwrecked to have 104.5 parking spaces. Based on the record and the Plan Commission's numerous discussions, it is unclear exactly how many onsite parking spaces Shipwrecked had available or would have available after construction, but it is clear that the construction would not provide 104.5 onsite parking spaces.[5] Accordingly, Sojenhomer proposed three methods—all of which are permitted under the Village's ordinances—to make up for Sojenhomer's failure to meet the parking requirements, including adding seven onsite parking spaces, executing a shared use agreement with other nonadjacent properties owned by Sojenhomer to use these properties' parking spaces, and paying a yearly fee in lieu of providing the remaining parking spaces. *See* CODE OF ORDINANCES § 152.030(D)(2)(a)-(c).

¶10 Sojenhomer's second CUP application was considered by the Village at two public hearings—on May 11 and August 23, 2021—and at six Plan Commission meetings—on May 25, July 27, August 23 and 24, September 28, and October 13. At the May 11 public hearing, both Plan Commission members Kolb and Roedl recused themselves after Sojenhomer's attorney addressed the

---

[4] All references to CODE OF ORDINANCES § 152.030 in this decision are to the September 13, 2021 amendment. We note that during the pendency of these proceedings, this section was amended, but it does not appear that the previous version of this section was included in the appellate record. Further, while the amendments to this section do appear to relate to this CUP application, the amendments do not impact our decision on appeal.

[5] The Village admits that the "conceptual conversations [about parking] make the record confusing."

GoFundMe donations. After recusing himself, Kolb testified at the hearing as a member of the public.

¶11 During the Plan Commission meetings, the discussion centered around the parking issue. Sojenhomer was asked to find a way to include more onsite parking and provide a revised plan, and a number of proposed alternatives were discussed at the subsequent meetings. As a result, on July 22, 2021, Sojenhomer filed a Special Development District (SDD) application, requesting relief from the Village's setback requirements to construct a parking lot.[6] Sojenhomer stated, however, that the SDD application did not amend the second CUP application, and it was not a resubmittal of that application.

¶12 The August 23, 2021 public hearing addressed both the second CUP and SDD applications. On August 24 and September 28, the Plan Commission again met to discuss the applications, and Kolb participated in the discussion. There is also evidence in the record that despite recusing himself from public consideration of the application, Roedl was in contact via email with Plan Commission members during this period, discussing the CUP and his concerns.

¶13 During the September 28, 2021 meeting, the Plan Commission discussed including a condition limiting the number of additional seats in Shipwrecked, pursuant to CODE OF ORDINANCES § 152.030(D)(2)(d), which Sojenhomer opposed, stating that "[c]utting the number of seats in half makes the

---

[6] According to the Village, Sojenhomer also "subsequently submitted shared parking 'suggestions' that included the Cape Cod Motel (owned by Sojenhomer and used for employees) and Fat Louis's, a shop selling olive oil, which is also owned by Sojenhomer. Both [suggestions] needed the approval of separate SDD relief from setback requirements to accommodate additional parking."

project no longer financially viable." The Plan Commission took a vote on that issue, and Kolb's vote caused a tie, so the matter was tabled for another meeting. Finally, on October 13, the Plan Commission denied the second CUP application by a vote of 4-2. Kolb participated in the vote and voted to deny the project, and Roedl abstained from voting.

¶14    The Plan Commission later issued its written findings of fact and conclusions of law. It concluded that the CUP was contrary to the Village's comprehensive plan because "[p]ermitting the expanse of the restaurant at this location can only serve to exacerbate existing traffic safety and congestion problems in this area and therefore does not promote the public safety and welfare of the Village," the proposed number of onsite parking spaces "is insufficient to serve the expanse contemplated in the [a]pplication," and the alternative parking "fulfillment method[s] provided in the application [are] not acceptable" for various reasons. The Plan Commission denied both the CUP and the SDD.

¶15    On November 24, 2021, Sojenhomer filed this action with the circuit court, asserting a claim for certiorari review of the Village's denial of the CUP. After reviewing the entire record in the matter, the court issued its written decision, concluding that the Plan Commission did not proceed according to law and reversing the denial of Sojenhomer's CUP application. According to the court, "there were two Plan Commission members"—Kolb and Roedl—"who initially recused themselves due to a high risk of bias"; "however, these Plan Commission members ended up materially involved in the hearings and, as a result, violated Sojenhomer's right to a fair and impartial hearing." The court continued,

> It is undisputed that Sojenhomer's project complied with all the Village of Egg Harbor's ordinances…. In spite of that fact, a review of the entire record in this matter makes

> it clear that Sojenhomer's right to an unbiased and fair tribunal of its application was violated. The involvement and actions of Mr. Kolb and Mr. Roedl had … poisoned the well. Once that occurred, it's hard to fathom how that damage could be undone and that defect cured on remand. I conclude it cannot.

It therefore ordered "that a conditional use permit consistent with Sojenhomer's May 23, 2021[] application be issued by the Village of Egg Harbor."

¶16 Thereafter, the Village responded with a motion for reconsideration of the circuit court's decision. In its motion, the Village argued that the court failed to consider "all available remedies in exercising its discretion" and that public policy required reconsideration. After briefing, the court denied the Village's motion. The court observed that the Village did not deny that the court had the authority to reverse its CUP decision, but the court determined that regardless of any other alleged remand options, "due process and fundamental fairness" violations are "extremely serious" and "drastic consequences may result." According to the court, its decision was based on its finding that "the well was so poisoned against [Sojenhomer] and [the] application, no amount of curative efforts can remove that blight." The Village appeals.

## DISCUSSION

¶17 On appeal, the Village clarifies that it "does not dispute" that Sojenhomer "did not get a fair hearing on its [CUP] application" and that it "does not appeal the [circuit] court[']s decision to reverse the [Village's] denial of the [CUP]." The Village does, however, appeal the court's "order to unconditionally grant the conditional use permit instead of other available remedies for a remand." Thus, the scope of our review in this case is different from a traditional appeal of a CUP denial.

8

¶18 Typically, our scope of certiorari review is limited to:

> (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411. Here, however, the Village does not challenge the circuit court's conclusion that the Plan Commission did not proceed on a correct theory of law. *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 24, 498 N.W.2d 842 (1993) ("The phrase 'acted according to law' has been interpreted as including 'the common-law concepts of due process and fair play.'");[7] *see also Miller v. Zoning Bd. of Appeals of Lyndon Station*, 2023 WI 46, ¶¶9, 13, 19, 407 Wis. 2d 678, 991 N.W.2d 380 (stating that adjudicative decisions involve "apply[ing] existing law

---

[7] In *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 498 N.W.2d 842 (1993), our supreme court explained:

> [W]e recognize that zoning decisions implicate important private and public interests; they significantly affect individual property ownership rights as well as community interests in the use and enjoyment of land. Furthermore, zoning decisions are especially vulnerable to problems of bias and conflicts of interest because of the localized nature of the decisions, the fact that members of zoning boards are drawn from the immediate geographical area, and the adjudicative, legislative and political nature of the zoning process. Since biases may distort judgment, impartial decision-makers are needed to ensure both sound fact-finding and rational decision-making as well as to ensure public confidence in the decision-making process.

*Id.* at 25-26 (footnotes omitted). According to the court, "where established criteria direct the Board's fact-finding and decision-making, [the property owner] should expect that a decision will be made on the basis of the facts and the law. If a Board member prejudges the facts or the application of the law, then [the property owner's] right to an impartial decision-maker is violated." *Id.* at 26.

to individual facts … like whether to grant a variance or permit a legal non-conforming use" and "when adjudicative acts are involved, procedural due process requires impartial decision-makers").[8]

¶19    Based on the circuit court's conclusion that the Plan Commission did not proceed on a correct theory of law, it then had "three options—affirm, reverse, or remand for further proceedings consistent with the court's decision." *Hartland Sportsmen's Club, Inc. v. City of Delafield*, 2020 WI App 44, ¶12, 393 Wis. 2d 496, 947 N.W.2d 214; WIS. STAT. § 68.13(1) (2021-22).[9]    The Village does not challenge the court's *ability* to order reversal; instead, it appears that the Village challenges only the court's choice between reversal or remand, arguing that the

---

[8] We note that after the circuit court's decision in this case, Sojenhomer applied for the expansion of its liquor license to accommodate the new construction, but the Village denied the liquor license expansion. *Sojenhomer LLC v. Village of Egg Harbor Bd. of Trs. (Sojenhomer II)*, No. 23-C-44, 2023 U.S. Dist. LEXIS 186920, at *4-5 (E.D. Wis. Oct. 18, 2023). Sojenhomer then filed an action against the Village in federal court, alleging causes of action under 42 U.S.C. §§ 1983 and 1985 for violations of its equal protection rights, substantive due process rights, and procedural due process rights and seeking compensatory and punitive damages for the denial of the CUP and the expansion of the liquor license. *Id.* at *1-2. Sojenhomer alleged that the Village denied the liquor license application due to its denial of the CUP, despite the fact that the circuit court had ordered the CUP be granted unconditionally. *Id.* at *5. After briefing before this court was complete, the federal district court issued its decision, granting the Village's motion for judgment on the pleadings and dismissing Sojenhomer's case. *Id.* at *21.

We conclude that the federal district court's decision has no bearing on our decision in this case. First, we are not bound by federal decisions on issues of state law. *See West Bend Mut. Ins. Co v. Berger*, 192 Wis. 2d 743, 755, 531 N.W.2d 636 (Ct. App. 1995). Second, the federal case addressed different issues and is therefore distinguishable. In the federal case, the Village challenged Sojenhomer's procedural due process claim, while in this case, the Village acknowledges its due process violation and challenges only the circuit court's remedy. Finally, we disagree with the district court's assertion that a CUP is more in the nature of a legislative decision than an adjudicative decision. *Sojenhomer II*, No. 23-C-44, at *16-17. The Plan Commission's decision here was adjudicative, not legislative, as it involved applying the existing Village ordinances to the individual facts of the CUP application.

[9] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

court's "decision ordering the grant of a [CUP] instead of remanding the matter back to the Plan Commission to cure the bias issue was an abuse of discretion."[10] (Formatting altered.) "A circuit court's discretionary decision is reviewed under an erroneous exercise of discretion standard." *Ness v. Digital Dial Commc'ns, Inc.*, 227 Wis. 2d 592, 599-600, 596 N.W.2d 365 (1999). "A reviewing court will uphold a discretionary decision if the circuit court considered the relevant facts, properly interpreted and applied the law, and reached a reasonable determination." *Id.* at 600.

¶20     Recently, in *Hartland Sportsmen's Club*, we clearly outlined the standard by which we are to review whether remand is appropriate on certiorari review. There, we stated:

> Remand to the municipality or administrative tribunal for further hearings is appropriate where (1) the defect in the proceedings is one that can be cured, but (2) supplementation of the record *by the government decision maker* with new evidence or to assert new grounds is not permitted. Consequently, (3) "[o]utright reversal is appropriate when the due process violation cannot be cured on remand," which includes cases in which the evidence failed to support the government's decision.

*Hartland Sportsmen's Club*, 393 Wis. 2d 496, ¶14 (alteration in original; citations omitted).

¶21     As mentioned, the circuit court determined that by the actions of Kolb and Roedl, Sojenhomer's right to a fair and impartial hearing had been

---

[10] Wisconsin courts changed the terminology used in reviewing a circuit court's discretionary act from "abuse of discretion" to "erroneous exercise of discretion" in 1992. *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992). While the two phrases refer to the same standard of review, *id.*, we urge counsel to use the correct terminology going forward.

violated, and the Village does not challenge that determination. Based on the court's review of the evidence in the record, it further concluded that Kolb and Roedl's involvement "poisoned the well" and "that damage could [not] be undone and that defect [could not be] cured on remand." Thus, the third principle in *Hartland Sportsmen's Club* is applicable: "Outright reversal is appropriate when the due process violation cannot be cured on remand." *Id.*, ¶20 (quoting *Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶12 n.5, 337 Wis. 2d 484, 805 N.W.2d 127). Reversal was clearly a remedy that was available to the court.

¶22 The Village does not question the remedies available under *Hartland Sportsmen's Club*.[11] It argues, instead, that the circuit court erred by not ordering other options. For example, the Village asserts that the court could have: (1) "remanded the matter back to the Plan Commission and ordered a new hearing without Mr. Kolb and Mr. Roedl either as a five member instead of seven member Plan Commission or a seven member Commission with substitutes for Mr. Kolb and Mr. Roedl"; (2) "ordered the creation of an entirely new set of commissioners to rehear the matter"; (3) "remanded the matter to the Village Board of Appeals" pursuant to WIS. STAT. § 62.23(7)(e)7.b.; or (4) "appointed a referee or 'master.'" According to the Village, "[t]here would be no need to rehear the application. The new decision makers could rely on the existing record."

---

[11] The Village *does* argue that *Hartland Sportsmen's Club, Inc. v. City of Delafield*, 2020 WI App 44, 393 Wis. 2d 496, 947 N.W.2d 214, is not a *bar* to remand. We agree, but we also recognize that our decision in that case provides a legal basis for our conclusion here that the circuit court did not erroneously exercise its discretion.

¶23     We conclude that the circuit court did not erroneously exercise its discretion by determining that the alternatives the Village suggests are not viable options under the circumstances.  First, WIS. STAT. § 68.13(1) permits a remand "to the decision maker."  Based on the plain language of the statute, *see State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110, "the decision maker" in this case is the Plan Commission.  Thus, § 68.13(1) does not provide a legal basis to remand to another entity, the Village Board of Appeals, or a referee or master.  Second, "a certiorari court cannot order a municipality on remand to perform a certain act."  *Hartland Sportsmen's Club*, 393 Wis. 2d 496, ¶23 (citing *Guerrero*, 337 Wis. 2d 484, ¶9).  The Village cites no authority for the court to substitute others for duly elected or appointed members of the Plan Commission.  At best, the court could have ordered a remand to some of the Plan Commission—absent Kolb and Roedl—but the court considered this option and reasonably concluded that the entire Plan Commission was tainted.

¶24     In reply, the Village makes the conclusory statement that "any of the so-called taint from the bias of … Kolb and Roedl is curable by removing and replacing them on remand."  (Formatting altered.)  The Village fails, however, to develop that argument beyond stating that Sojenhomer's initial CUP application was denied, which was before Kolb contributed to the GoFundMe page and before Roedl was on the Plan Commission, and that Sojenhomer does not challenge the findings and conclusions the Plan Commission made on the CUP denial at issue here.

¶25     Neither of those assertions explain how "removing" Kolb and Roedl would specifically cure the due process violation.  The Village cites no authority or evidence that the due process violation at issue in this case could be cured on

remand. Absent evidence to the contrary, we accept the circuit court's finding that "the well"—meaning the Plan Commission—"was so poisoned against [Sojenhomer] and [the] application, no amount of curative efforts can remove that blight." Further, to the Village's point that the CUP application would not need to be reheard and the new decision makers could rely on the existing record, this solution would only exacerbate the court's concerns if the Plan Commission were to merely rely upon the existing record, where both Roedl and Kolb participated in multiple hearings. Thus, the court did not erroneously exercise its discretion by reversing the Plan Commission's decision and granting the CUP.

¶26 On appeal, the Village advances several additional arguments for why we should overturn the circuit court's decision, which we do not find persuasive. First, the Village claims that the court erroneously exercised its discretion because it based its reversal and grant of Sojenhomer's CUP on a mistake of fact: that Sojenhomer met all zoning requirements. According to the Village, "[t]he fact remains that Shipwrecked is now woefully short of required on-site parking and proposes a major expansion without any significant increase in on-site parking," and the "court ignored the Commission's findings and conclusions."

¶27 It is true, as noted above, that the circuit court stated that "[i]t is undisputed that Sojenhomer's project complied with all the Village of Egg Harbor's ordinances." In support of this proposition, the court cited the Plan Commission's chairperson, who opined that "[w]e may agree [Sojenhomer has] checked all the boxes." According to the record, a different Plan Commission member also stated:

> I contend they have met the ordinances. What leg do
> we have to stand on legally to not allow them to do this
> addition? In terms of a [CUP], I don't think we have a leg

14

> to stand on. This will turn into a court battle that we are going to lose. Two years from now the project is going to happen. This will cost the Village tens of thousands of dollars.

Finally, a third member argued,

> I think an important part of this is to review the … memo of the State of Wisconsin statu[t]es …. It demands that we have reasons to deny this application. I don't see what Shipwrecked has not complied with…. Unless someone comes up with a firm factual reason to deny [the CUP], I don't think we can deny it. They have done everything we have asked.

¶28 The crux of the circuit court's decision was that there was a clear violation of the right to an unbiased and fair tribunal and that the violation could not be cured on remand. As noted, the Village does not challenge the court's finding of bias, and it also does not meaningfully argue that the violation can be cured on remand. The issue is not whether Sojenhomer met all reasonable and measurable ordinance requirements. The court reasonably considered whether the CUP met those requirements in weighing the options available to remedy the violation of Sojenhomer's rights. The court's real issue of concern was that Sojenhomer never had the opportunity to prove to an unbiased trier of fact whether it could meet the ordinance requirements.

¶29 Based on the above evidence in the record, the circuit court could reasonably have found that most or all of the Village's ordinance requirements were met but that some on the Plan Commission nevertheless did not approve how Sojenhomer proposed to resolve the parking issues. However, because the Plan Commission reached that decision based upon the influence of biased Commission members, the court concluded that Sojenhomer's due process rights were violated. In other words, the Plan Commission was absolutely authorized to decide against Sojenhomer's CUP for the reasons it stated; however, the Commission had to

reach that decision without undue influence, and the court reasonably found that it did not.

¶30    Second, the Village claims that the circuit court erred because it erroneously believed that the Village's review under its zoning ordinances "is limited to a 'box checking' exercise." According to the Village, a checklist is not possible because each CUP application is unique and employing one "would eliminate the flexibility of a conditional use."[12] The Village states that "[t]he Findings and Conclusions of the Village of Egg Harbor Plan Commission regarding lack of parking, congestion, negative effect on adjoining properties and other considerations including public health, safety or general welfare [are] well within the Plan Commission's discretion."[13]

¶31    We disagree that the circuit court's reference to the chairperson's statement about "check[ing] all the boxes" was a determination that the Plan Commission's decision was to be based upon inflexible considerations. Instead, the court decided that the Plan Commission failed to act fairly and impartially in exercising its discretion and adjudicating the merits of Sojenhomer's otherwise

---

[12] We note that the Village's brief-in-chief, in support of this proposition, attributes a five-line quotation to our supreme court's decision in *Edward Kraemer & Sons, Inc. v. Sauk County Board of Adjustment*, 183 Wis. 2d 1, 14, 515 N.W.2d 256 (1994). However, the language quoted by the Village does not appear on the cited page of *Kraemer*, nor does it appear anywhere else in that decision. Instead, the Village's misattributed quote appears to have come from the Village's own brief in a previous case before this court in 2011. While *Kraemer* certainly provides support for the Village's assertion that a conditional use procedure must be flexible, and while the Village is free to reuse arguments from its own previous briefs, we caution against misattributing language to our supreme court, or any court.

[13] Within the Village's argument, it claims that because Sojenhomer applied for SDD relief from the setback requirements, "[t]his fact alone demonstrates that [Sojenhomer] itself knew that it did not and could not check all the boxes." The circuit court did not address the SDD relief because it was not submitted with the original CUP application and was not the subject of the certiorari review of the CUP denial.

sufficient CUP application. Therefore, it concluded that the Plan Commission did not proceed according to law. The Village does not contest that finding.

¶32 Third, the Village argues that the circuit court's decision was "unreasonable because the so-called 'well' was poisoned by" Shipwrecked's general manager, Joe Smith, "before it was poisoned by … Kolb and Roedl." (Formatting altered.) During the review of Sojenhomer's *initial* CUP application, Smith was a Village Board Trustee, was chair of the Plan Commission, and presented the initial CUP application to the Plan Commission. The Village explains that participants noted Smith's "conflict of interest," and it states— without citing any direct evidence in the record—that "Smith was aggressive, argumentative and condescending at the public hearing on May 13." The Village cites case law from several other jurisdictions, stating that an official in these circumstances should not have been permitted to participate in the proceedings at all. In summary, according to the Village, the court's failure to note Smith's actions, and the fact that he also tainted the proceedings, means the court's order "should not stand."

¶33 We agree with Sojenhomer that the Village's argument on this point is a red herring. First, Sojenhomer's initial CUP application is not before this court. Second, it is undisputed that Smith was not a Plan Commission member when the CUP application at issue here was considered. Finally, and overall, the Village fails to articulate any reason why a *former* member's participation in the discussion about a *prior* CUP application taints subsequent Plan Commission proceedings, in which the former member did not participate, that resulted in a denial of a subsequent CUP. The Village also cites no legal authority for its claim that any of Smith's prior actions require the circuit court to ignore the current due process violation and uphold the denial of the CUP.

17

¶34 Finally, the Village argues that the fact that the circuit court acknowledged "the drastic nature of this decision," when it need not have been so drastic, means that the court's decision was unreasonable and, therefore, an erroneous exercise of discretion. The Village asserts that the "court's drastic decision severed any consideration of the dramatic and direct impact on neighboring business properties or the common good and general welfare of the community." According to the Village, the "court could have remanded the matter back to the Plan Commission and ordered a new hearing without Mr. Kolb and Mr. Roedl …. This is by far the most common and appropriate remedy."

¶35 We conclude that the Village's argument on this point is nothing more than a disagreement with the circuit court's decision, and it disregards our standard of review. The record supports the court's conclusion that some, if not all, of the remaining Plan Commission members were influenced by Kolb's involvement and Roedl's behind-the-scenes arguments after each had ostensibly recused themselves. In reply, the Village suggests that "[e]valuating the proposed expansion for parking requirements involved applying simple mathematics yielding a clear, objective irrefutable conclusion that the expansion does not meet zoning requirements. It is inconceivable that this process was or could be tainted." But if the Plan Commission's decision was crystal clear, then it would not have needed to deliberate the CUP over multiple meetings. Further, this argument ignores that the second-to-the-last vote on an issue with the CUP application resulted in a tie due to Kolb's participation and vote. The possibility that the Plan Commission was tainted is not inconceivable. Accordingly, the court reasonably found that although there were other options available, there was no way to afford Sojenhomer a fair and impartial hearing on remand.

18

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.